**BJ's WHOLESALE CLUB, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PEAR-SON), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 9, 2012.

Decided May 10, 2012.

Neil T. Dombrowski, Paoli, for petitioner.

Vasil L. Kirifides, Media, for respondent Denise Pearson.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

BJ's Wholesale Club (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision and order of the Workers' Compensation Judge (WCJ) granting the Claim Petition of Denise Pearson (Claimant) and awarding her total disability benefits. In his decision and order, the WCJ found that Claimant was unable to return to her pre-injury position and ordered Employer to pay total disability benefits, even though Claimant had

been provided with light-duty work at the same pay and had been terminated from that job because she reported to work after the injury with a blood alcohol level of .108. Because, under the evidence that the WCJ found credible, Claimant's loss of earnings was caused by her termination for misconduct and not by her injury, we reverse.

The facts found by the WCJ and the evidence found credible by the WCJ establish the following. Claimant began working for Employer on June 1, 2008. (WCJ Decision, Finding of Fact (F.F.) ¶ 2a, Reproduced Record (R.R.) at 9a; August 18, 2008 Hearing Transcript (H.T.) at 6, R.R. at 294a.) She was employed on a part-time basis, approximately five hours, three to four days a week, checking receipts of customers as they left Employer's store. (F.F. ¶ 2a, R.R. at 9a; August 18, 2008 H.T. at 6–9, 34–35, R.R. at 294a–297a, 322a–323a.)

On June 20, 2008, Claimant sustained a work-related injury when a customer ran over her left foot with a shopping cart. (F.F. ¶ 2b, R.R. at 9a; August 18, 2008 H.T. at 9–10, R.R. at 297a–298a.) Claimant reported this incident to her supervisor and was sent home to ice the foot. (F.F. ¶ 2b, R.R. at 9a; August 18, 2008 H.T. at 10–12, R.R. at 298a–300a.) When Claimant continued to report pain in the foot, Employer sent her for medical treatment. (F.F. ¶ 2b, R.R. at 9a; August 18, 2008 H.T. at 12, R.R. at 300a.) The medical center diagnosed the injury as a foot and toe contusion and authorized Claimant to return to work with the restriction that she should be sitting 95% of the time. (F.F. ¶ 2b, R.R. at 9a; August 18, 2008 H.T. at 12–13, R.R. at 300a–301a; Exhibit D–7, R.R. 819a–820a.) In response to that restriction, Employer provided Claimant sedentary work, paperwork and shelving books from a motorized cart, at the same rate of pay. (F.F. ¶ 2b, R.R. at 9a; August 18, 2008 H.T. at 8, 13–15, 35, R.R. at 296a, 301a–303a, 323a; Exhibit D–6, R.R. at 818a.)

Employer's substance abuse policy provided that an employee "who is under the influence of alcohol while on the job will be subject to disciplinary action to include imposed medical leaves, medical treatment, written reprimand and/or termination of employment." (F.F. ¶¶ 5f, R.R. at 15a; August 18, 2008 H.T. at 51, R.R. at 339a; March 25, 2009 H.T. at 17–19, R.R. at 367a–369a; Exhibit D–8, R.R. at 822a.) Claimant was aware of this policy. (August 18, 2008 H.T. at 51, 56, R.R. at 339a, 344a; March 25, 2009 H.T. at 19, R.R. at 369a; Exhibit D–2, R.R. at 814a.)

On the night of June 27, 2008, Claimant drank alcohol until around 2:00 a.m. or 4:00 a.m. (August 18, 2008 H.T. at 46–47, 52, R.R. at 334a–335a, 340a; Exhibit D–11 Pieretti Trial Dep. at 14, R.R. at 654a; Exhibit 2 to Exhibit D–11 Pieretti Trial Dep., R.R. at 700a.) She described the amount she consumed as "quite a bit" and testified that "I was feeling no pain[,] put it that way." (August 18, 2008 H.T. at 46–47, R.R. at 334a–335a.) After Claimant went to work at her scheduled late-afternoon time on June 28, 2008, the store manager asked her if she had been drinking and requested that she submit to an alcohol test. (F.F. ¶¶ 2c, 2d, R.R. at 9a–10a; August 18, 2008 H.T. at 17–22, R.R. at 305a–310a.) A blood alcohol test, performed at a nearby hospital with Claimant's consent, showed that Claimant had a serum alcohol level of .127, which is a blood alcohol level of .108. (F.F. ¶¶ 8b, 9a, 10, 11b, 14–16, R.R. at 16a–19a; August 18, 2008 H.T. at 21–22, R.R. at 309a–310a; Exhibit D–11 Pieretti Trial Dep. at 11–12, 24–26, R.R. at 651a–653a, 664a–666a; Exhibit D–9, R.R. at 825a; Exhibit 2 to Exhibit D–11 Pieretti Trial Dep., R.R. at

702a.) After receiving the blood test results, Employer, on July 3, 2008, terminated Claimant for being under the influence of alcohol at work. (F.F. ¶¶ 2d, 5d, R.R. at 10a, 14a; August 18, 2008 H.T. at 24, R.R. at 312a.)

On July 18, 2008, Claimant filed a Claim Petition seeking total disability benefits from the date of her termination onward. (Claim Petition, R.R. at 2a.) The WCJ held two evidentiary hearings and also received testimony of seven medical and hospital witnesses by trial deposition. The WCJ found, based upon testimony of Claimant's chiropractor, that Claimant is unable to perform the duties of her pre-injury job, which involved standing, and that this disability was caused by the June 20, 2008 injury rather than by a nerve condition in Claimant's feet that is unrelated to the workplace injury. (F.F. ¶ 2f, 4, 17, R.R. at 10a–14a, 19a.) The WCJ, however, found that Claimant is able to perform the light duty work Employer had provided her at the same rate of pay after her injury until she was terminated. (F.F. ¶¶ 2f, 4j, 7a, 17–18, R.R. at 10a, 14a, 16a, 19a.)

With respect to the issue of Claimant's termination, the WCJ found the testimony of Claimant credible and found that she drank quite a bit of alcohol on the night of June 27, 2008, but did not show outward signs of intoxication at work on June 28, 2008, such as smelling of alcohol, unsteadiness or slurred speech. (F.F. ¶¶ 2d, 2g, 12–15, R.R. at 10a, 18a–19a.) The WCJ also found credible the blood test result which showed that Claimant had a blood

alcohol level of .108 and found credible the testimony of Dr. Pieretti, the physician who interpreted Claimant's blood alcohol test, and the testimony of the hospital witnesses who authenticated the test result and testified to the accuracy of the test. (F.F. ¶¶ 8b, 14–16, R.R. at 16a, 18a–19a.) The WCJ found that "based upon the level of alcohol in Claimant's blood she would technically be under the influence of alcohol" (F.F. ¶ 14, R.R. at 18a), but nonetheless ordered Employer to pay her total disability benefits from the date of her termination onward.

Employer appealed and the Board affirmed the WCJ's order. This appeal followed.[1] The sole issue argued by Employer in this Court is whether the award of disability benefits was error where Claimant's loss of earnings was caused by her termination for reporting to work under the influence of alcohol.

■ Under the Workers' Compensation Act (the Act),[2] a claimant seeking disability benefits must prove that she has suffered a disability and that the disability was caused by a work-related injury. *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 508 Pa. 360, 365, 498 A.2d 800, 802 (1985); *Coyne v. Workers' Compensation Appeal Board (Villanova University and PMA Group)*, 942 A.2d 939, 945 (Pa.Cmwlth.2008); *Somerset Welding & Steel v. Workmen's Compensation Appeal Board (Lee)*, 168 Pa. Cmwlth. 78, 650 A.2d 114, 117 (1994). To prove a disability, the claimant must show not merely physical impairment, but loss of earning power. *Coyne*, 942 A.2d at 945

1. Our review is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence or whether constitutional rights were violated. *Harvey v. Workers' Compensation Appeal Board (Monongahela Valley Hospital)*, 983 A.2d 1254, 1259

n. 4 (Pa.Cmwlth.2009); *Virgo v. Workers' Compensation Appeal Board (County of Lehigh–Cedarbrook)*, 890 A.2d 13, 17 n. 8 (Pa. Cmwlth.2005).

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4,2501–2708.

n. 7; *Bissland v. Workmen's Compensation Appeal Board (Boyertown Auto Body Works)*, 162 Pa.Cmwlth. 348, 638 A.2d 493, 495 (1994); *Somerset Welding & Steel*, 650 A.2d at 119 n. 9. "[F]or the purposes of receiving workmen's compensation, 'disability' means loss of earning power, and thus although a claimant may suffer a work-related physical disability, it is only if that physical disability occasions a loss of earnings that a worker will be 'disabled' under the meaning of the Act and will be entitled to receive compensation." *Bissland*, 638 A.2d at 495.

■■■ Where the claimant's loss of earnings is a result of a termination for misconduct unrelated to the injury, the requirement of causal connection to the work-related injury cannot be satisfied and claimant is not entitled to disability benefits for that loss. *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 560 Pa. 12, 25–29, 742 A.2d 649, 656–58 (1999); *Hertz–Penske Truck Leasing Co. v. Workmen's Compensation Appeal Board (Bowers)*, 546 Pa. 257, 261–62, 684 A.2d 547, 549–50 (1996); *Harvey v. Workers' Compensation Appeal Board (Monongahela Valley Hospital)*, 983 A.2d 1254, 1261–62 (Pa.Cmwlth.2009); *Coyne*, 942 A.2d at 945–46; *Edwards v. Workers' Compensation Appeal Board (Sear's Logistic Services)*, 770 A.2d 805, 808 (Pa.Cmwlth.2001). For a termination to bar disability benefits, the employer must show that the termination was for conduct that amounts to bad faith or a lack of good faith on the part of the claimant. *Vista International Hotel*, 560 Pa. at 28–29, 742 A.2d at 657–58; *Coyne*, 942 A.2d at 945–46; *Virgo v. Workers' Compensation Appeal Board (County of Lehigh–Cedarbrook)*, 890 A.2d 13, 18–19 (Pa.Cmwlth. 2005).

■■■ If the employer has provided work within the claimant's physical limitations at no loss of pay and has shown that the claimant was terminated for conduct evidencing bad faith or a lack of good faith, disability benefits must be denied, regardless of whether the claimant has a physical disability caused by the work-related injury. *Sauer v. Workers' Compensation Appeal Board (Verizon Pennsylvania, Inc.)*, 26 A.3d 531, 533, 535–38 (Pa.Cmwlth.2011); *Coyne*, 942 A.2d at 945–46; *Virgo*, 890 A.2d at 15–21; *Edwards*, 770 A.2d at 807–08. Under such circumstances, the claimant is not entitled to workers' compensation disability benefits because "his loss of earnings subsequent to the discharge was caused by his own action, not by the work injury." *Edwards*, 770 A.2d at 808; *see also Sauer*, 26 A.3d at 538 (benefits were properly denied "because the loss of earnings ... was due to Claimant's discharge for fault"). Violation of an employer's substance abuse policy constitutes conduct that amounts to lack of good faith on the part of the claimant and a claimant terminated for such conduct is not entitled to disability benefits for that loss. *Edwards*, 770 A.2d at 808, 810.

That is the situation here. Claimant was terminated for being under the influence of alcohol at work in violation of Employer's substance abuse policy. The WCJ found that Claimant drank heavily and had a blood alcohol level of .108 and also found that "based upon the level of alcohol in Claimant's blood she would technically be under the influence of alcohol." (F.F. ¶¶ 2g, 8b, 14, R.R. at 10a, 16a, 18a).

The WCJ, the Board and Claimant assert only two bases for concluding that Claimant's reporting for work with a .108 blood alcohol level was not bad faith conduct: 1) that Claimant did not act intoxicated and 2) her family physician testified that a narcotic pain medication that Claimant had taken could "[c]onceivably" have kept alcohol in her body longer than nor-

mal. (F.F. ¶¶ 2g, 3b, 3e, 8d, 8e, 9c, 14–15, 17, R.R. at 10a–11a, 16a–19a; Board Opinion at 9, R.R. at 143a; Respondent's Br. at 17–19, 21).[3] While the issue of whether Claimant's conduct evidences lack of good faith is a question of fact to be determined by the WCJ, *Sauer*, 26 A.3d at 536; *Coyne*, 942 A.2d at 946, neither of these justifications is supported by substantial competent evidence in the record given the other evidence found credible by the WCJ.

■ The WCJ's findings that Claimant did not exhibit intoxicated behaviors do not negate the fact that she was under the influence of alcohol. Not only did the WCJ find that she had a blood alcohol level of .108, well over the level the Legislature has statutorily defined as being under the influence of alcohol, *see* 75 Pa.C.S. § 3802; 30 Pa.C.S. § 5502, but the medical testimony that the WCJ found credible established that Claimant was under the influence of alcohol. The WCJ found the testimony of Employer's medical expert witness Dr. Pieretti credible. (F.F. ¶ 14, R.R. at 18a). Dr. Pieretti testified that any person with a blood alcohol level of .108 is under the influence of alcohol and is impaired even if no intoxication characteristics are obvious or readily observable. (Exhibit D–11 Pieretti Trial Dep. at 26–28,

36–39, 44–46, R.R. at 666a–668a, 676a–679a, 684a–686a).

■ While Claimant's family physician testified that Claimant was on the prescription pain medication Hydrocodone and that Claimant had taken a stronger prescription narcotic Oxycodone as the result of pharmacy error (F.F. ¶¶ 3b, 3e, 17, R.R. at 11a, 19a; Exhibit C–4 Stein Trial Dep. at 17–24, R.R. at 432a–439a), there was no competent evidence presented to the WCJ that this in any way caused or contributed to her high blood alcohol level. Dr. Stein and Dr. Pieretti, both of whom the WCJ found credible, testified that Oxycodone and Hydrocodone do not affect the accuracy of blood alcohol test results. (Exhibit C–4 Stein Trial Dep. at 29–30, R.R. at 444a–445a; Exhibit D–11 Pieretti Trial Dep. at 29, 669a.)

■ Dr. Stein's testimony that Claimant's ingestion of Oxycodone could possibly have caused alcohol to remain in her bloodstream longer than normal was not competent evidence on which the WCJ could base any finding. To be competent evidence, medical expert testimony must be unequivocal. *Lewis*, 508 Pa. at 365–66, 498 A.2d at 802; *Potere v. Workers' Compensation Appeal Board (Kemcorp)*, 21 A.3d

3. The Board also held that under *Vista International Hotel*, Claimant was entitled to partial disability benefits even if terminated for misconduct unrelated to the injury. (Board Opinion at 8, R.R. at 144a.) That ruling is erroneous. Our Supreme Court's statements in *Vista International Hotel* that the discharged claimant would be entitled to partial disability benefits after termination for cause were due to the fact that the claimant had a loss of earnings and partial disability *before* her termination. 560 Pa. at 22–26, 742 A.2d at 654–57. Indeed, the Court specifically distinguished *Hertz–Penske Truck Leasing Co.* on the grounds that the claimant there had returned to work "without any loss of earnings; therefore, he was not at such time disabled for purposes of the Act," and noted that a claimant's rights to benefits can be defeated where "the employer can demonstrate that employment is available within the claimant's restrictions." *Vista International Hotel*, 560 Pa. at 25, 27, 742 A.2d at 656–57. Here, Employer provided Claimant with work within her restrictions, and Claimant, therefore, suffered no earnings loss before her termination and was not disabled under the Act. Because her termination, not her injury, was the only reason she suffered any earnings loss, she is not entitled to any workers' compensation disability benefits, partial or total, if her termination was for conduct evidencing lack of good faith. *Sauer*, 26 A.3d at 533, 535–38; *Coyne*, 942 A.2d at 943, 945–46; *Virgo*, 890 A.2d at 15–21; *Edwards*, 770 A.2d at 807–08.

684, 690 (Pa.Cmwlth.2011); *Housing Authority of the City of Pittsburgh v. Workmen's Compensation Appeal Board (Sheffield)*, 166 Pa.Cmwlth. 456, 646 A.2d 686, 689 (1994). The fact that the WCJ found Dr. Stein's testimony credible does not change this. While it is for the WCJ as fact finder to determine credibility, whether expert testimony is equivocal is an issue of competence, not credibility, and is a question of law subject to this Court's plenary, *de novo* review. *Lewis*, 508 Pa. at 366, 498 A.2d at 803; *Potere*, 21 A.3d at 690; *Housing Authority of the City of Pittsburgh*, 646 A.2d at 688–89. "[A] WCJ's credibility determination cannot serve to preclude this Court from determining whether an expert's testimony was equivocal. The law is equally well settled that questions relating to the equivocality of an expert's testimony are questions of law fully subject to this Court's review." *Potere*, 21 A.3d at 690.

Examination of Dr. Stein's testimony in its entirety demonstrates that his opinions concerning the effect of Oxycodone and Hydrocodone were equivocal. Dr. Stein's testimony on this issue on both direct examination and cross-examination was as follows:

A. Well, narcotic pain medications *can* slow the GI motility, the gastric motility, the way the stomach processes food and drink, alcohol or regular drinks. So since it slows the process, it *may* delay the process by which it gets put out to the blood to the liver for processing and further elimination.

Q. Is there a difference between the effect that Hydrocodone versus Oxycodone would have on the body's ability to rid itself of alcohol?

A. *Conceivable*, again I'm not an expert in toxicology, but since it's a stronger narcotic, it in my mind since it's a stronger narcotic, it *could* increase the

dis-mobility or slowing of the gastric contents to empty and therefore increase the amount of alcohol that stays in the system and the duration it stays in the system.

\*   \*   \*

Q. So other than to say that it *may* have been a factor—and *you can't be certain* that it was a factor, correct?

A. *Correct.*

Q. So other than to say that it *may* have been a factor, you can't tell us how much of a factor it would have been, correct?

A. *That's correct.*

\*   \*   \*

Q. But, Dr. Stein, are you able to say since your testimony that Endocet [Oxycodone] is a stronger medication than the Hydrocodone, what impact that stronger pain medication would have on her body's ability to dispose of the alcohol?

A. I'm able to say that I believe that since it is a stronger narcotic *conceivably* it *can* take longer for alcohol to get out of her system. But I don't have anything on paper that I can definitely say a hundred percent this is the way it is.

(Exhibit C–4 Stein Trial Dep. at 25–26, 33–34, R.R. at 440a–441a, 448a–449a) (emphasis added).

Such expert opinion that it is conceivable that a substance could cause or may have caused an effect does not constitute unequivocal medical testimony and is not competent evidence to support a finding that any such effect occurred. *Lewis*, 508 Pa. at 367, 498 A.2d at 803; *Housing Authority of the City of Pittsburgh*, 646 A.2d at 688–89. Because there was no competent evidence that Claimant's blood alcohol level and consequent intoxication

were a result of anything other than her voluntary act of drinking heavily, the conclusion of the WCJ and the Board that Claimant's termination was not for conduct evidencing a lack of good faith is not supported by substantial evidence.

Because the findings of the WCJ that are supported by competent evidence in the record establish that Claimant's loss of earnings was caused by her termination from her job for her own conduct that amounts to a lack of good faith and not by her work-related injury, she is not entitled to disability benefits. Accordingly, the order of the Board affirming the WCJ's order that Employer pay Claimant disability benefits for her June 20, 2008 injury must be reversed.

## *ORDER*

AND NOW, this 10th day of May, 2012, the order of the Workers' Compensation Appeal Board in the above matter is reversed.