# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carson Valley School and Inservco   :
Insurance Services, Inc.,   :
      :
      Petitioners   :
      :
      v.   : No. 1159 C.D. 2016
      : No. 1160 C.D. 2016
Workers' Compensation Appeal   : Submitted: February 6, 2017
Board (Estate of Ashley Conway),   :
      :
      Respondent   :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**           **FILED: March 17, 2017**


In these consolidated appeals, Carson Valley School (Employer) petitions for review of two orders of the Workers' Compensation Appeal Board (Board), which affirmed in part and reversed in part two decisions of a Workers' Compensation Judge (WCJ). Employer appeals from the Board orders to the extent they granted two Claim Petitions brought by Ashley Conway (Claimant)[1]

---

[1] Claimant died on November 18, 2016, subsequent to the filing of these appeals, of causes unrelated to her work injuries. Upon an application to substitute party by Claimant's counsel and submission of the certificate of grant of letters of administration issued by the Montgomery County Register of Wills, this Court ordered that the Estate of Ashley Conway, Lula Conway, Administratrix, be substituted as the Respondent in these matters and that the captions be amended to reflect the substitution.

against Employer for injuries to her right ring finger on May 31, 2012 and September 14, 2013. In its appeal, Employer argues that Claimant was not entitled to wage-loss disability benefits for the period after December 11, 2013 because Claimant's employment was terminated for bad faith conduct unrelated to her work injuries. For the reasons that follow, we affirm the orders of the Board.

The facts regarding Claimant's injury history are not in dispute. Claimant worked as a children's aide at Employer, which is a group home facility for at-risk children. (WCJ Decisions, Findings of Fact (F.F.) ¶¶3a, 7.) On May 31, 2012, Claimant sustained an injury to her right finger, left elbow and left hand while attempting to break up a fight between two students. (*Id*., F.F. ¶¶3b, 7.) Employer accepted this injury through a medical-only Notice of Temporary Compensation Payable (NTCP) on June 7, 2012, which converted into a medical-only Notice of Compensation Payable (NCP). (*Id*., F.F. ¶1.) Claimant returned to work with restrictions on June 5, 2012, however, Claimant's right ring finger was crooked and she wore a splint to correct it. (*Id*., F.F. ¶¶3c, 7.) In January 2013, Dr. Mark Rekant performed surgery on Claimant's right ring finger, and she returned to work in March 2013. (*Id*.) Employer issued an NTCP in January 2013 for a central slip disruption of Claimant's right ring finger and paid Claimant disability benefits during the period she was out of work. (*Id*., F.F. ¶1.)

On September 14, 2013, Claimant reinjured her right ring finger while attempting to restrain a student who attempted to stand up and walk away despite being confined to a wheelchair. (*Id*., F.F. ¶¶3d, 7.) Claimant returned to work, and Employer accepted this second injury as work related. (*Id*., F.F. ¶¶3e, 7, 15.) On December 11, 2013, Employer terminated Claimant's employment when it discovered that her driver's license was suspended after she had been warned in

2

September 2013 that failure to maintain a valid driver's license could result in her discharge. (*Id*., F.F. ¶¶3e, 4b, 7, 8.)

Claimant filed the Claim Petition for the first injury date on February 4, 2014 and filed the Claim Petition for the second injury date on July 9, 2014. In addition, Claimant also filed a Penalty Petition on August 22, 2014, in which she alleged that Employer and its insurer failed to comply with their obligation to pay wage-loss disability benefits consistent with the NTCP and a notice of conversion dated February 12, 2014. Although consolidated hearings were held for the three petitions, the Claim Petitions were filed under a separate docket number from the Penalty Petition. The WCJ and Board each issued two identical decisions and orders, one for each docket number.

In the proceedings before the WCJ, Claimant testified by deposition and at a hearing. Claimant presented the deposition testimony of her surgeon, Dr. Rekant, who testified that Claimant is only capable of sedentary to light duty work, while Employer presented the deposition testimony of its expert, Dr. Andrew Sattel, who opined that Claimant was capable of light to medium duty work. (WCJ Decisions, F.F. ¶¶5d, 6c.) In addition, Employer's assistant human resources director, Richard Kryston, testified in a hearing before the WCJ.

Both Claimant and Kryston testified regarding the circumstances of Claimant's termination. Claimant testified that she first learned her driver's license was suspended during a traffic stop in August 2013 while driving to work and stated that the police officer advised her to go to Philadelphia Traffic Court to resolve the issue. (Sept. 30, 2014 Hearing Transcript (H.T.) at 90-92, Reproduced Record (R.R.) 182-184; Claimant Dep. at 70-71, R.R. 220.) Claimant testified that between the date of this traffic stop and September 9, 2013, when she drove a

3

group of Employer's students on a field trip to a New Jersey amusement park, she went to Traffic Court and called the Pennsylvania Department of Transportation (PennDOT) and she determined that her suspension was the result of the fact that a notice of a citation had been returned to PennDOT as undeliverable and her failure to pay a $25 license restoration fee. (H.T. at 90-92, R.R. 182-184, 190; Claimant Dep. at 74-75, R.R. 221.) Claimant testified that Employer discovered during the September 9, 2013 field trip that her license had been suspended through one of Claimant's co-workers; at a disciplinary meeting several days later, Claimant explained to her supervisor that she had taken steps to address the suspension and she believed the suspension had been lifted as of the date of the field trip because she had paid the restoration fee. (H.T. at 91-93, 98, R.R. 183-85, 190; Claimant Dep. at 71-75, R.R. 220-21.) Claimant stated that she provided proof to Kryston that her license was restored following the field trip and Kryston verified with PennDOT that her license was restored. (H.T. at 94-95, R.R. 186-87.)

Claimant explained that PennDOT again suspended her license for one year on October 25, 2013, but that she was not aware of the suspension until Employer discovered it on December 9, 2013 and brought it to her attention. (*Id.* at 95-96, R.R. 187-88.) Claimant testified that she informed Employer that this suspension was a mistake, but that she was nevertheless discharged on December 11, 2013. (*Id.* at 96, R.R. 188; Claimant Dep. at 35, 39-40, 79, 81, R.R. 211-12, 222.) According to Claimant, she immediately went to Traffic Court where she was told that the suspension was in error and she was given a copy of the citation and returned mail that went to an incorrect address; Claimant stated that she informed her supervisor on December 13, 2013 of the situation regarding her license suspension and dropped off the relevant documents for Kryston, but did not

4

receive a response. (Claimant Dep. at 40-44, 82-83, 95-97, R.R. 212-213, 223, 226.) Claimant testified that her license was restored by PennDOT notice dated February 19, 2014, effective December 30, 2013, and the license remained valid as of the date of her hearing testimony. (H.T. at 79-80, 96-97, R.R. 171-72, 188-189; Claimant Dep. at 43, R.R. 213.)

Kryston testified that having a valid driver's license was a condition of employment for Claimant because her job duties included driving students on home visits and school trips. (H.T. at 10, 23-24, 32, R.R. 104, 117-118, 125.) Kryston stated that, on September 9, 2013, an employee who had driven with Claimant and driven several students to the New Jersey amusement park reported to a supervisor that Claimant had said that her license was suspended. (*Id.* at 30-31, R.R. 123-124.) According to Kryston, when he met with Claimant after the amusement park incident she said that she was not aware that her license was suspended. (*Id.* at 31, 49, R.R. 124, 141.) Kryston testified that Claimant could have been terminated at that time based on the failure to maintain a valid driver's license, but she was instead placed on administrative leave and was issued a warning, or "counseling report," which informed Claimant that any future suspensions would lead to the termination of her employment. (*Id.* at 17-20, 24, 32, 50-51, R.R. 111-114, 118, 125, 142-143.) Kryston stated that Employer removed Claimant from administrative leave when Claimant presented PennDOT documents that showed her license was restored. (*Id.* at 50-51, R.R. 142-143.) Kryston testified that, in accordance with this warning, Claimant completed and signed a form that authorized Employer to perform periodic checks of Claimant's driver's license status on PennDOT's website. (*Id.* at 23, 25, 31-32, R.R. 117, 119, 124-125.)

Kryston testified that, on December 9, 2013, his supervisor, the head of human resources, performed a quarterly check of Claimant's license status on PennDOT's website and discovered that the license was suspended. (*Id*. at 24-25, 28, R.R. 118-119, 121.) Kryston stated that the decision was then made by her supervisor with his approval to terminate Claimant's employment for failure to have a valid driver's license, which was contrary to her job requirements and was consistent with the September 2013 counseling report. (*Id*. at 21-24, 28, R.R. 115-118, 121.)

The WCJ issued two decisions and orders on July 6, 2015 granting the two Claim Petitions and the Penalty Petition. The WCJ found Claimant to be credible and accepted her testimony in its entirety, accepted Kryston's testimony as credible except to the extent it conflicted with Claimant's testimony, and found the testimony of Dr. Rekant, Claimant's surgeon, to be more credible and persuasive than that of Dr. Sattell. (WCJ Decisions, F.F. ¶¶7- 9.) Accordingly, the WCJ concluded that Claimant sustained a central slip disruption to her right ring finger on May 31, 2012 and reinjured that finger on September 14, 2013 and was entitled to payment of reasonable and necessary medical expenses and disability benefits with an appropriate offset for unemployment compensation benefits paid. (*Id*., Conclusion of Law (C.L.) ¶2, Order.)

The WCJ determined that Claimant's termination of employment was not for bad faith conduct and found instead that Claimant "exhibited good faith in all respects." (*Id*., C.L. ¶3.) The WCJ explained her conclusion as follows:

> Claimant's position was terminated through no fault of her own. Claimant explained quite credibly the circumstances surrounding the suspension of her driver's license. On both occasions when Employer notified her that the license was suspended, she immediately took

6

steps to rectify the situation. Furthermore, the suspensions pertained to the same issue. Claimant paid a fine but was unaware she had to pay a reinstatement fee, and the notice was not sent to her correct address. Once Claimant realized the problem, she took the steps necessary to correct the situation.

(*Id.*, F.F. ¶13.) The WCJ additionally granted Claimant's Penalty Petition and awarded a penalty of 10% of benefits from December 11, 2013 until the date of decision on the basis that, while Employer clearly accepted the September 14, 2013 injury, no NTCP or NCP for this injury appears in the Bureau's files or was produced by the parties during litigation. (*Id.*, F.F. ¶15, C.L. ¶5.)

Employer appealed the two WCJ decisions to the Board, which issued opinions and orders affirming the grant of the two Claim Petitions and reversing the grant of the Penalty Petition. On the termination issue, the Board concluded that, because the WCJ accepted Claimant's testimony as credible and that testimony showed that Claimant had no notice that her license was suspended and took immediate efforts to rectify the situation when she learned her license was suspended, Employer could not meet its burden of showing that Claimant's termination was the result of bad faith conduct. (Board Opinions at 8.) On the Penalty Petition, the Board determined that the WCJ committed an error of law and reversed the grant of this petition. While the Board recognized that a failure to file an NCP or Notice of Compensation Denial within 21 days of receiving notice of an injury can be cause for imposing a penalty, the Board concluded that there was evidence in the record that Employer had issued a timely NTCP for the September 14, 2013 injury and that NTCP converted to an NCP. (*Id.* at 9-10.)

7

Employer filed petitions for review of both Board orders with this Court.[2] On appeal, Employer does not challenge that Claimant sustained two work-related injuries on May 31, 2012 and September 14, 2013 but argues that Claimant was not entitled to disability benefits after December 11, 2013 because her employment was terminated for bad faith conduct unrelated to her injuries. Employer's two appeals were consolidated by an August 31, 2016 order of this Court. In its petitions for review, Employer explained that it was not challenging the reversal of the penalty award and that it had only filed a petition for review of the Board's order on the Penalty Petition docket because both WCJ and Board decisions contain identical findings of fact and the WCJ and Board orders on both the Claim Petitions and Penalty Petition dockets are identical. (Petitions for Review ¶10, R.R. 381.) Claimant did not file a cross-petition for review challenging the Board's reversal of the WCJ's penalty award in her favor.[3]

---

[2] This Court's review of an appeal from a determination by the Board is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence and whether Board procedures or constitutional rights were violated. *BJ's Wholesale Club v. Workers' Compensation Appeal Board (Pearson)*, 43 A.3d 559, 562 n.1 (Pa. Cmwlth. 2012).

[3] Though Claimant did not file a petition for review related to the Board's decision on her Penalty Petition, Claimant nevertheless argues in her brief to this Court that the Board's reversal of the penalty award was in error. Claimant's failure to file a petition for review challenging the Board's reversal of the grant of the Penalty Petition constituted a waiver of that issue, and Employer's appeal of the Board order under the Penalty Petition docket number does not change our conclusion. As this Court has stated, where both parties are aggrieved by a decision, they must file cross-appeals of the tribunal's decision; "[a]n aggrieved party may not preserve his issues by allowing them to ride 'piggyback' into the administrative appellate tribunal or this Court on another party's appeal." *USX Corp. v. Workmen's Compensation Appeal Board (McDermott)*, 618 A.2d 1150, 1152 (Pa. Cmwlth. 1992); *see also Appeal of the Municipality of Penn Hills*, 546 A.2d 50, 54 (Pa. 1988) (holding that the party who chooses to appeal chooses the issues and whatever is not chosen is waived).

Under the Workers' Compensation Act (Act),[4] a claimant seeking disability benefits must prove that she has suffered a disability caused by a work-related incident. *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 498 A.2d 800, 802 (Pa. 1985); *Reyes v. Workers' Compensation Appeal Board (AMTEC)*, 967 A.2d 1071, 1077 (Pa. Cmwlth. 2009) (*en banc*). Disability, under the Act, requires not merely impairment, but loss of earning power. *Reyes*, 967 A.2d at 1077; *Albert Einstein Healthcare v. Workers' Compensation Appeal Board (Stanford)*, 955 A.2d 478, 481 (Pa. Cmwlth. 2008). "[A]lthough a claimant may suffer a work-related physical disability, it is only if that physical disability occasions a loss of earnings that a worker will be 'disabled' under the meaning of the Act and will be entitled to receive compensation." *BJ's Wholesale Club v. Workers' Compensation Appeal Board (Pearson)*, 43 A.3d 559, 563 (Pa. Cmwlth. 2012) (quoting *Bissland v. Workmen's Compensation Appeal Board (Boyertown Auto Body Works)*, 638 A.2d 493, 495 (Pa. Cmwlth. 1994)).

Because disability requires loss of earnings, a claimant is not entitled to disability benefits where the claimant's loss of earnings is a result of a discharge for bad faith conduct that was committed by the claimant subsequent to the injury or was not known to the employer until after the injury. *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 742 A.2d 649, 656-58 (Pa. 1999); *BJ's Wholesale Club*, 43 A.3d at 563. In *Virgo v. Workers' Compensation Appeal Board (County of Lehigh-Cedarbrook)*, 890 A.2d 13 (Pa. Cmwlth. 2005), this Court explained the bad faith standard as follows:

> [T]he stricter willful misconduct standard [applicable to unemployment compensation cases] is not the standard of

---

[4] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.1, 2501–2708.

"bad faith" in the context [of] allocating fault in a workers' compensation case. Nonetheless, some "bad faith" willful misconduct on the part of the claimant that caused the discharge has to be established or benefits will not be suspended or will be reinstated. If, for example, a claimant receives unsatisfactory performance evaluations based solely on an inability to perform despite good faith efforts to do so, bad faith on the part of the claimant has not been made out. Simply put, to make out "bad faith" or "fault on the part of a discharged claimant," if an employer only shows that he or she "would if he or she could," then "bad faith" is not shown and benefits should continue or be reinstated; but if an employer establishes that the claimant "could if he or she would, and didn't," "bad faith" is established and a claimant is not entitled to continuing benefits.

*Id*. at 19 (citations omitted); *see also Shop Vac Corp. v. Workers' Compensation Appeal Board (Thomas)*, 929 A.2d 1236, 1240 (Pa. Cmwlth. 2007).

The burden falls on the employer to show that the conduct for which claimant was discharged amounts to bad faith on the part of the claimant. *Vista International Hotel*, 742 A.2d at 657-58; *Coyne v. Workers' Compensation Appeal Board (Villanova University and PMA Group)*, 942 A.2d 939, 945-46 (Pa. Cmwlth. 2008). Whether the claimant's actions constitute bad faith conduct is a question of fact to be determined by the WCJ. *BJ's Wholesale Club*, 43 A.3d at 564; *Coyne*, 942 A.2d at 946.

Upon review, we conclude that under the findings of fact by the WCJ, Employer did not meet its burden of showing that Claimant was discharged for bad faith conduct. The WCJ, who has sole authority over issues of credibility of witnesses, found Claimant credible and accepted her testimony in its entirety, and this conclusion may not be revisited on appeal. *Furnari v. Workers' Compensation Appeal Board (Temple Inland)*, 90 A.3d 53, 59-60, 70 (Pa. Cmwlth. 2014); *Stalworth v. Workers' Compensation Appeal Board (County of Delaware)*, 815

10

A.2d 23, 29 (Pa. Cmwlth. 2002). Claimant testified that she was unaware in August 2013 that her license was suspended until a traffic stop and she had already taken steps to have her license reinstated by the time she drove students to a New Jersey amusement park on September 9, 2013. Claimant also testified that she obtained confirmation that her license was reinstated and showed this documentation to Employer. Similarly, according to her testimony, Claimant was not aware that PennDOT had again suspended her license until Employer performed a check on December 9, 2013. Claimant explained that when Employer informed her that her license was suspended, she took immediate steps to have her license reinstated and informed Employer on December 13, 2013 why her license had been erroneously suspended, but Employer would not reverse its decision to discharge her. Claimant's testimony thus demonstrates that she was not aware on either occasion that her license was suspended, that both suspensions were for reasons outside of her control and that she took immediate action in both cases to lift the suspension. We are satisfied that this evidence was sufficient to support the WCJ's conclusion that Claimant had not acted in bad faith.

Employer argues that if this Court affirms the WCJ's decision it would create a "credible excuse" exception for a claimant's bad faith that does not exist in the case law. We disagree with Employer that the WCJ's decision was contrary to precedent applying the "bad faith" standard. Our cases do not deem any violation of an employer's policies or best interests that either occurred subsequent to the injury or were not discovered until after the injury to disqualify a claimant from receiving wage-loss disability benefits. Instead, our Supreme Court has made clear that disability benefits may not be withheld for an injured employee after discharge without some element of fault on behalf of the claimant in the

11

events that lead to the discharge. *See Vista International Hotel*, 742 A.2d at 656-59 (rejecting employer's argument that fault is not relevant in determining whether injured employee is entitled to disability benefits following discharge and holding that claimant was entitled to total disability benefits unless employer showed that claimant was discharged for bad faith conduct or that other suitable employment was available); *see also Virgo*, 890 A.2d at 17 n.9. Thus, decisions of this Court distinguish between conduct where a claimant "could if he or she would, and didn't," which supports a finding of bad faith conduct on the part of the claimant, and situations where the claimant "would if he or she could," which does not arise to the level of bad faith. *Shop Vac Corp.*, 929 A.2d at 1240; *Virgo*, 890 A.2d at 19. By accepting Claimant's testimony that she was not aware of her license suspensions, that the second suspension was the result of PennDOT's error and that she took prompt action to reinstate her license after both suspensions, the WCJ did not err in holding that Claimant's conduct leading to her discharge was not in bad faith.

Accordingly, the orders of the Board are affirmed.

_____
JAMES GARDNER COLINS, Senior Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carson Valley School and Inservco  :
Insurance Services, Inc.,  :
   :
       Petitioners  :
   :
      v.  : No. 1159 C.D. 2016
   : No. 1160 C.D. 2016
Workers' Compensation Appeal  :
Board (Estate of Ashley Conway),  :
   :
       Respondent  :

# **O R D E R**

AND NOW, this 17th day of March, 2017, the orders of the Workers' Compensation Appeal Board in the above-captioned matter are affirmed.

_____
JAMES GARDNER COLINS, Senior Judge