IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Latisha Latimer,                                :
                    Petitioner           :
                                                :   No. 1945 C.D. 2016
            v.                                   :
                                                :   Submitted: September 22, 2017
Workers' Compensation Appeal    :
Board (Keystone Quality Transport),  :
                    Respondent          :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: January 4, 2018


            Latisha Latimer (Claimant) petitions for review of the November 2, 2016
order of the Workers' Compensation Appeal Board (Board) affirming the decision of
a Workers' Compensation Judge (WCJ) denying Claimant's claim petition.


**Facts and Procedural History**

            On September 17, 2014, Claimant was hired by Keystone Quality
Transport Company (Employer) as a driver of handicapped individuals and underwent
an employment physical and drug screening test.  (Findings of Fact Nos. 3(b), 4(a).)
Claimant reported to work on September 22, 2014, and at the end of her shift that day,
she was injured in a motor vehicle accident.  (Finding of Fact No. 4(b).)  At the time
of the accident, she was in the front passenger seat, wearing a seat belt.  The air bags

did not deploy, and Claimant described the impact as, "I, like, jerked really hard forward." (Findings of Fact Nos. 3(c), 4(b).) Claimant was later treated at a hospital and released. (Finding of Fact No. 3(c).)

Claimant returned to work the following day, September 23, 2014, "ready, willing and able to work," but was told to return home and wait for a call from the human resource manager, Lauren Evans. (Findings of Fact Nos. 3(d), 4(c), 6(a).) Ms. Evans called Claimant and told her that she had tested positive for marijuana and that she should not report back to work. (Finding of Fact No. 3(d).)

On October 8, 2014, Claimant filed a claim petition alleging injuries to her head, neck, back, and right leg as a result of the accident. Employer filed an answer, denying all material allegations. On October 15, 2014, Employer issued a "medical only" notice of temporary compensation payable (MONTCP), describing Claimant's injury as a "neck, back and right leg, strain/contusion." (Finding of Fact No. 2.) By operation of law, the MONTCP converted to a medical only notice of compensation payable. (Finding of Fact No. 2.) The matter was assigned to a WCJ who held a series of hearings.

In a deposition and subsequent hearing, Claimant testified that the accident occurred at the end of her shift on her first day of work, after she and another driver had dropped off the last patient and were driving back to headquarters. She stated that she was sitting in the front passenger seat and another vehicle hit their stopped van from behind as they were attempting to merge into traffic. Claimant testified that she did not know whether any part of her body struck any part of the van, or whether she lost consciousness. Claimant stated that she was dizzy, her arms went numb, and she felt pain in her whole body, particularly in her neck. After the accident, Claimant rode in the van back to the base, and she was told to write out an incident

2

report. Claimant stated that she told an employee that she felt dizzy, had a headache and her neck was stiff, and asked for Tylenol. After she left, Claimant testified that she took a bus to the emergency room where she was given prescriptions for muscle relaxers and pain relievers and given a work excuse for the following day. (Finding of Fact 4(b); Reproduced Record (R.R.) at 17a-20a, 52a-54a, 83a-86a.)

Claimant testified that she did attempt to return to work the following day but was told to return home and wait for a call from Ms. Evans. When Ms. Evans called, Claimant stated that she informed her that her drug screen was positive for THC and asked her to return her uniforms. Claimant stated she was "just shocked" when Ms. Evans told her about the positive test result and denied smoking marijuana or using any illegal drugs, stating, "I was not smoking pot in that time." (Findings of Fact Nos. 4(a), 4(d).) Claimant, however, explained, "I found out later that when visiting someone I did eat something [a brownie] that had it in it, but I wasn't aware of it at the time." (Finding of Fact No. 3(e).) Claimant testified that she spoke with Ms. Evans a few days after the September 23, 2014 phone call and discussed with her the possibility of a light duty position. (Finding of Fact No. 4(e); R.R. at 21a, 86a-87a.)

Claimant stated that she was presently experiencing pain in her neck, back, arms, hands, and right knee and suffering from headaches, anxiety, and memory loss. She indicated that she was taking several prescription medications, including Percocet, Topamax, Flexeril, and Amantadine, and that she was going to physical therapy three times per week and seeing a doctor for pain once or twice a month. In February 2015, she stated that she underwent surgery to her right knee to repair a torn meniscus. (Findings of Fact Nos. 3(h), 4(f); R.R. at 24a-26a, 32a, 60a, 63a.)

Claimant acknowledged that she had previously injured her right knee from a slip and fall outside of her house in March of 2014. She stated that she went to

the emergency room for care and treated with physical therapy. Claimant also acknowledged she had been treated for anxiety before the accident. Claimant testified that she did not feel fully capable of returning to her pre-injury duties. (Findings of Fact at Nos. 3(f)-(g); R.R. at 33a-34a, 60a.)

In support of her claim petition, Claimant presented a packet of her medical records,[1] which included: Prime Care Rehabilitation treatment records from September 25, 2014, through July 28, 2015, showing Claimant reported headaches and back, neck, and right knee pain; an MRI report of Claimant's right knee dated October 30, 2014, showing a superior surface tear posterior horn medial meniscus; reports from Lewis Sharps, M.D., including a February 26, 2015, operative report for an arthroscopic partial medial meniscectomy of the Claimant's right knee, demonstrating "large flaps compatible with a traumatic origin"; and progress notes from Brad Klein, M.D., reflecting treatment recommendations for post-concussion syndrome and chronic migraine headaches. (Findings of Fact Nos. 5(a)-(e).)

Employer presented the testimony of Ms. Evans, its human resource manager.[2] Ms. Evans testified that all new hires are required to submit to a pre-employment physical and drug screen urinalysis test. Ms. Evans explained that each employee is provided with a packet which contains Employer's drug screening policy as well as the Employer's policies and procedure manual. She stated that Claimant had signed a Substance Abuse Screening Consent Form on September 18, 2014, as well as an acknowledgement of receipt of the Employer's policies and procedure manual and

---

[1] The Parties stipulated to proceeding in this case by medical records in place of medical depositions. (WCJ's decision at 3 n.1.)

[2] Although the table of contents on Claimant's reproduced record indicates that it includes the deposition testimony of Ms. Evans on page 178a, the reproduced record only contains pages 1a-123a. As such, all citations to Ms. Evan's testimony will be to the notes of testimony.

4

the Workers' Compensation Law, which Employer submitted into evidence. (Findings of Fact Nos. 6(a), 6(b), 9, 10; Notes of Testimony (N.T.), 5/28/15, at 5-9, 12.)

Ms. Evans further testified employees have the screening done after the interview and are warned during orientation that, if the results are positive, Employer would not be able to move forward with the hiring. Ms. Evans explained that after orientation, they must wait for Ms. Evans to contact them regarding the results of the drug screening. Ms. Evans explained that, if the results are negative, the employee is to contact the base manager to find out where to report and to be put on a schedule for training. In the event of a positive screening, Ms. Evans testified that the screening facility will contact the employee prior to contacting her. Ms. Evans emphasized that employees were instructed to wait to hear from her regarding their drug screens and physicals before calling to get their schedules. (N.T. at 10, 5/28/15 12, 13, 14, 25.)

With regard to Claimant, Ms. Evans testified she was interviewed on September 11, 2014, and had the drug screening at some point prior to her orientation on September 18, 2014. Ms. Evans stated that she was contacted by the screening facility and told that Claimant's drug screening came back positive. Ms. Evans testified that she called Claimant regarding the results for three consecutive days and left several messages, but Claimant never called her back. Ms. Evans stated that on September 22, 2014, she learned that one of Employer's drivers was involved in an accident and that Claimant was on board the van. Ms. Evans then spoke with Claimant and explained that she had been trying to contact her about her results and asked why she had not returned her calls. Ms. Evans testified that Claimant responded that she did not return Ms. Evans' call because she had been working and does not answer her phone when she is working. Ms. Evans testified that she reiterated to Claimant that she should not have been working because she had not yet heard from Ms. Evans regarding her drug

5

screening results. When asked why the driver with whom Claimant was riding did not stop her from boarding the van, Ms. Evans explained that the driver would not have known about the status of her results and would not have questioned it, since the driver was at an off-site location. Ms. Evans stated that she then told Claimant about the positive results of the drug screening and informed her that, as a result, Employer would not able move forward with her employment. (Findings of Fact Nos. 6(c)-(e); N.T., 5/28/15, at 15, 16, 23-26, 28-29.)

At the time of their conversation, Ms. Evans stated that Claimant did not discuss the accident or tell Ms. Evans that she was injured and explained the events which would have occurred if Claimant had indicated she was injured. Ms. Evans acknowledged that Claimant called her approximately a week later to ask about her paycheck but stated that there was no discussion of light duty work and that Claimant did not mention any work injury. (Finding of Fact No. 6(f); N.T., 5/28/15, at 17, 18, 35.)

Employer also presented the expert medical report of Christian Fras, M.D., who performed an independent medical evaluation of Claimant on December 18, 2014, and reviewed her medical records. His physical evaluation of Claimant revealed Claimant had tenderness and muscle spasms in her neck and back. Dr. Fras' report opined that Claimant had sustained strain and sprain injuries to her neck, back, and right leg. The report also indicated that Claimant's medical examination did not show any suggestion of a symptomatic medial meniscus tear and noted that many meniscal tears occur without any trauma. Although he determined that Claimant had not yet fully recovered from her injuries, he released her to work in a modified duty capacity only. (Findings of Fact Nos. 12(b)-(f).) In his report, Dr. Fras also stated his belief that Claimant was capable of working as a paramedic and noted that the job

6

description available to him suggested that the job activities of a paramedic were within the restrictions he outlined. (Board's op. at 9-10.)

On December 3, 2015, the WCJ filed a decision and order denying Claimant's claim petition for indemnity benefits. The WCJ found Claimant credible only to the extent that she sustained and reported a work injury on September 22, 2014, and determined that the occurrence of the work injury was supported by Claimant's medical records and testimony, the mechanism of the injury, and the Employer's MONTCP. (Finding of Fact No. 14.) The WCJ concluded that Claimant had sustained an injury in the nature of "neck, back and right leg, strain/contusion" as specified on the MONTCP, which arose in the course and scope of her employment. The WCJ noted, "the fact the Employer issued a MONTCP on October 15, 2014[,] further underscore[d] the Claimant's employment status at the time of the work injury." (Finding of Fact No. 17.)

Further, the WCJ found the medical opinions of Dr. Fras credible in all respects and rejected those of Claimant's medical expert, Dr. Sharps, to the extent that they differed from those of Dr. Fras. (Finding of Fact No. 14.)

However, the WCJ found Claimant's testimony not credible in all other respects, specifically with regard to her explanation for testing positive for marijuana and to the extent that Claimant believed she had suffered any loss of earnings as a result of the work injury. In making that determination, the WCJ stated that he considered the relatively minor mechanism of injury, that Claimant was wearing a seat belt and the airbags did not deploy, and that Claimant reported "willing and able" to work the day following the accident. The WCJ found that the evidence strongly suggested that Claimant would have worked the following day and into the future. Thus, the WCJ determined that Claimant was injured as a result of the September 22, 2014 accident,

but not to the extent that she was unable to perform her job duties. (Finding of Fact No. 13.)

Furthermore, the WCJ stated that any loss of earnings Claimant did suffer was attributable to her own misconduct in testing positive for marijuana, which resulted in her discharge for cause, and was not due to a compensable work injury. In so finding, the WCJ relied on Ms. Evans' credible testimony, particularly with regard to the drug screening test results, which the WCJ determined was supported by other evidence. The WCJ additionally considered the following three factors: Claimant's misconduct violated Employer's clearly-stated substance abuse policy; Claimant's behavior took place before the work injury; and Claimant's discharge was the expected result of her behavior. Accordingly, the WCJ stated that no indemnity benefits were payable to Claimant. (Findings of Fact Nos. 14, 15, 18, 19, 21; Conclusions of Law No. 2.)

Claimant appealed to the Board, arguing that several of the WCJ's findings of fact were not supported by substantial evidence, including the limitation of her injuries to "neck, back and right leg, strain/contusion," as stated on the MONTCP. (Finding of Fact No. 18.) Claimant also argued the WCJ erred in: denying her wage loss benefits when she was injured in the course and scope of her employment, which had nothing to do with her positive drug screening test; concluding that her loss of earnings resulted from her discharge for cause; concluding that Claimant knowingly ingested marijuana; and concluding that Claimant failed to meet her burden of proof to establish any enlargement of the description of the injury. The Board affirmed the WCJ in an opinion and order dated November 2, 2016. Claimant filed a petition for review with this Court,[3] raising the same arguments.

---

[3] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes*

8

## Discussion

In a workers' compensation proceeding, the WCJ is the ultimate fact finder and is the sole authority for determining the weight and credibility of evidence. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997). "As such, the WCJ is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part." *Id.* The WCJ's findings will not be disturbed on appeal when they are supported by substantial, competent evidence. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a finding." *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel, State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990).

Moreover, where both parties present evidence, it is irrelevant that the record contains evidence which supports a finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether evidence exists that supports the WCJ's findings. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Additionally, on appeal, all inferences drawn from the evidence shall be taken in favor of the party prevailing before the WCJ. *Krumins Roofing & Siding v. Workmen's Compensation Appeal Board (Libby)*, 575 A.2d 656, 659 (Pa. Cmwlth. 1990).

In Claimant's first and third issues, she argues that the Board erred in affirming the WCJ's finding that she did not sustain disabling injuries as a result of the

---

*Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

motor vehicle accident. She continues that this finding was "contradicted in numerous respects, most notably by . . . Dr. Fras." (Claimant's brief at 10.) While acknowledging Dr. Fras' belief that Claimant was capable of working as a paramedic with certain restrictions and that the job description available to him suggested that the job activities fell within those restrictions, Claimant asserts that her own testimony regarding her job duties proved that they far exceeded the restrictions imposed by Dr. Fras, and as such, her injuries rendered her disabled.

Claimant also acknowledges Dr. Fras' opinion that there was no evidence that Claimant's torn meniscus knee injury was caused by the vehicle accident and that the injury was not symptomatic at the time of his examination, but asserts that the WCJ should have included a finding that her injury resulted from the vehicle accident. Essentially, Claimant disagrees with the opinion of Dr. Fras and argues that her own testimony demonstrated that her injuries from the accident, including the knee injury, rendered her disabled from her pre-injury position.

Here, Employer submitted evidence regarding Claimant's injuries which contradicted the evidence that Claimant presented regarding the same. "As we have said so many times[,] the resolution of such a conflict is for the [WCJ] and if the [WCJ] accepts evidence which a reasonable mind might accept as adequate to support the conclusion reached, then we are precluded from disturbing the [WCJ]'s findings even though there is evidence to the contrary and even though we might have resolved the conflict differently." *Grabish v. Workmen's Compensation Appeal Board (Trueform Foundations, Inc.)*, 453 A.2d 710, 712-13 (Pa. Cmwlth. 1982). Here, the WCJ's finding regarding Claimant's injuries was based upon the injuries specified in the MONTCP, which were supported by Dr. Fras' opinion, the treatment records, the mechanism of the injury, and Claimant's initial, credible, subjective complaints. As

10

such, the WCJ's finding regarding Claimant's injuries was supported by substantial evidence. The fact that Claimant presented conflicting evidence, which she believes reveals the true extent of her injuries, is of no moment as the WCJ found her testimony not credible.

Claimant next argues that the Board erred in affirming the WCJ's conclusion that, under *Brewer v. Workers' Compensation Appeal Board (EZ Payroll & Staffing Solutions)*, 63 A.3d 843 (Pa. Cmwlth. 2013), Claimant's positive drug screening test barred her from receiving wage loss benefits because her loss of earnings was attributable to the violation of Employer's drug policy. Claimant contends that, even if she had knowingly ingested marijuana, she was still entitled to benefits under *Brandywine Mazda Suzuki and Inservco v. Workers' Compensation Appeal Board (Asman)*, 872 A.2d 253 (Pa. Cmwlth. 2005). Under *Brandywine Mazda*, Claimant asserts that it is erroneous for a WCJ to suspend benefits absent proof of available work when the termination is based upon a claimant's actions which occurred prior to the work injury. Thus, she argues, because she was injured and subsequently terminated for actions taken prior to the injury and was not provided light-duty work, she was entitled to benefits.

In *Brandywine Mazda*, a claimant sustained a work injury and was terminated by the employer several weeks later. *Id.* at 255. A WCJ found that the claimant was terminated for poor performance, which the employer was aware of prior to the incident when claimant sustained the work injury. *Id.* The WCJ determined that the claimant's loss of earnings was not due to his work injury. *Id.* at 254. Ultimately, the WCJ granted the claimant total disability benefits, but suspended them as of the date that she had sufficiently recovered from her injury such that she was able return to work without restriction, stating that any loss of earnings after that date were not due

11

to the work injury. *Id.* The Board determined that the WCJ erred in suspending the benefits without proof of job availability. *Id.* On appeal, we held:

> when a claimant has proven a disabling work injury, *i.e.*, a loss of earnings caused by a work injury, then pre-injury grounds for firing the claimant cannot act as a superseding cause of a claimant's loss of earnings and relieve employer of having to show job availability in order to obtain a suspension of benefits.

*Id.* at 257. Thus, we held that, because the employer terminated the claimant because of his poor performance which occurred prior to the injury, the Board properly determined that benefits could not be suspended absent proof of available work. *Id.*

In *Brewer*, a claimant sustained a work injury and immediately submitted to a drug test per the employer's zero-tolerance drug policy, which required any employee involved in a workplace accident to submit to a drug test. 63 A.3d at 846. The policy also required that the employee be immediately discharged if the test returned positive. *Id.* The claimant was discharged because his drug test returned positive. *Id.* The employer indicated that it had work available for employees with work restrictions, including light-duty work. *Id.* A WCJ granted the claimant's claim petition in part but suspended benefits as of the day of the claimant's discharge. *Id.* The claimant appealed, and the Board affirmed. *Id.* On appeal to this Court, the claimant argued, *inter alia*, that the WCJ erred in suspending benefits because the employer did not issue a notice of ability to return to work. We affirmed, stating that such notice was limited to modifications sought upon the receipt of medical evidence. *Id.* at 847. Thus, a notice of ability to return to work was not required because the suspension was not based upon medical evidence, but the claimant's misconduct. *Id.*

12

In *BJ's Wholesale Club v. Workers' Compensation Appeal Board (Pearson)*, 43 A.3d 559 (Pa. Cmwlth. 2012), we reiterated the burden of a claimant seeking benefits under the Workers' Compensation Act (the Act)[4]:

> [A] claimant seeking disability benefits must prove that she has suffered a disability and that the disability was caused by a work-related injury. To prove a disability, the claimant must show not merely physical impairment, but loss of earning power. For the purposes of receiving workmen's compensation, "disability" means loss of earning power, and thus although a claimant may suffer a work-related physical disability, it is only if that physical disability occasions a loss of earnings that a worker will be "disabled" under the meaning of the Act and will be entitled to receive compensation.

*Id.* at 562-63 (internal citations and quotation marks omitted).

Here, the WCJ found that Claimant had sustained a compensable work injury. However, the WCJ also stated that Claimant had not demonstrated any loss of earnings due to her work injury, in that the evidence demonstrated that Claimant was willing and able to return to work the following day and into the future. For that reason, the WCJ denied her claim petition. Further, the WCJ found that any loss of earnings she did incur was due entirely to her termination for misconduct in testing positive for marijuana.

Once again, in *Brandywine Mazda*, we stated, "*when a claimant has proven a disabling work injury*, *i.e.*, a loss of earnings caused by a work injury, then pre-injury grounds for firing the claimant cannot act as a superseding cause of a claimant's loss of earnings and relieve employer of having to show job availability *in order to obtain a suspension of benefits*." 872 A.2d at 257 (emphasis added).

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

13

However, unlike in *Brandywine Mazda* and *Brewer*, in the present case, the WCJ found that Claimant did not prove a disabling work injury and her claim petition seeking indemnity benefits was denied. Contrary to Claimant's argument, Employer did not have a burden to show job availability because it was not seeking a suspension of benefits, as Claimant was never awarded benefits in the first place. Thus, whether Claimant's misconduct occurred pre- or post-work injury is irrelevant here because that inquiry relates to whether a claimant's benefits should be suspended, which only becomes relevant *after* a claimant has demonstrated his entitlement to indemnity benefits because of a disabling work injury. As such, in this case, Employer was not required to show job availability or to provide Claimant with light-duty work.

In conclusion, because the findings of the WCJ were based upon sufficient evidence in the record and supported the conclusion that Claimant was not entitled to indemnity benefits, we discern no error.

Accordingly, the order of the Board is affirmed.

                                      _____
                                        PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Latisha Latimer,                                      :
                Petitioner           :
                              :    No. 1945 C.D. 2016
               v.                       :
                              :
Workers' Compensation  Appeal         :
Board (Keystone Quality Transport),   :
                Respondent          :

## ***ORDER***

AND NOW, this 4th day of January, 2018, the November 2, 2016 order of the Workers' Compensation Appeal Board is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge