# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

MM Metals USA, LLC, : 
      Petitioner : 
: 
   v. : No. 668 C.D. 2024
: Submitted: April 8, 2025
Lewis Warner (Workers' : 
Compensation Appeal Board), : 
      Respondent : 

BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER   FILED: June 4, 2025

  MM Metals USA, LLC (Employer) petitions for review of an April 30, 2024 Order of the Workers' Compensation Appeal Board (Board), which affirmed a decision of a Workers' Compensation Judge (WCJ) that granted a Claim Petition and Penalty Petition (together, Petitions) filed by Lewis Warner (Claimant).[1] Before this Court, Employer argues there was not substantial evidence to support the findings of the work injury, that Claimant's surgery was work related, or that he was entitled to total disability after December 21, 2021. In addition, Employer argues the award of a 20% penalty was manifestly unreasonable. Upon review, we affirm

---

[1] The WCJ actually granted the Claim Petition only in part, denying it to the extent it sought to include post-traumatic cervicalgia due to aggravation of an underlying degenerative cervical condition as a work injury. Claimant did not challenge that denial, and, therefore, that issue is not before us.

in part and vacate in part, and remand for further proceedings, as set forth more fully below.

## I.   BACKGROUND

This matter was previously before the Court on Employer's supersedeas request, at which time the Court set forth the relevant background as follows:

> On December 17, 2021, Claimant filed the Claim Petition asserting that, while working for Employer on October 13, 2021, he fell, resulting in a left shoulder strain/sprain. (WCJ Decision at 4.) Claimant averred he notified his supervisor on the same day. Claimant alleged that he was temporarily totally disabled as of October 13, 2021. Employer filed a timely answer denying the material allegations.
>
> Claimant filed the Penalty Petition on January 4, 2022, contending Employer violated the Workers' Compensation Act [(Act)][1] by not filing a Notice of Compensation Denial (NCD), Notice of Compensation Payable (NCP), [Notice of Temporary Compensation Payable (NTCP)], or Agreement of Compensation within 21 days of learning of Claimant's injury, and seeking a 50% penalty. . . . Employer again filed a timely answer denying the material allegations. Employer, on January 10, 2022, filed a NCD denying that Claimant sustained a work-related injury and admitting that it received notice of and/or was aware of the alleged injury as of November 9, 2021. (WCJ Decision, Finding of Fact (FOF) ¶ 1.)
>
> > FN1  Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.
>
> The Petitions were consolidated, and hearings were held before the WCJ, at which Claimant offered his own testimony and that of his medical expert Miteswar Purewal, M.D. Employer submitted the testimony of fact witnesses David McPeak and Vincent DaGrava and the deposition testimony of its medical expert, Robert Grob, D.O.
>
> . . . .
>
> Claimant testified by deposition,[2] describing the events of October 13, 2021, including the fall, the pain that followed, and his advising his

safety director of the fall. Claimant continued to work in pain and advised Employer's general manager of the pain resulting from the fall off the steps about a week to 10 days later. Employer sent Claimant to WorkNet on November 10, 2021, where his left shoulder and clavicle were x-rayed and he completed mobility exercises and was released for light duty work. WorkNet sent a note to Employer, but Claimant did not return to work at that time or provide his restrictions to Employer. Claimant did not feel he could return to work, and he unsuccessfully tried to contact McPeak, Employer's Business Resources Manager. Claimant subsequently tested positive for C[OVID]-19, of which he advised McPeak via a message and his supervisor via text. Claimant received a termination letter on or about November 26, 2021, discharging him for job abandonment.

> FN2 Claimant's deposition testimony is set forth in Finding of Fact 3 and found at Certified Record Item 17.

Claimant described his ongoing pain in his shoulder and back and his medical treatment, including receiving an MRI of his clavicle and left shoulder and medication. Claimant denied any prior injury to his left shoulder but acknowledged receiving injections in his back below the shoulder blades following a motorcycle accident in 2018, the symptoms of which he stopped experiencing after eight months of treatment. Claimant believed his inability to twist, turn, and lift his shoulders would prevent him from driving some of the work machinery. However, on cross-examination Claimant acknowledged that he had not yet been assigned to a position, as he had not yet completed Employer's training program, and that there were some positions he could perform. He began treating with Dr. Purewal on his counsel's referral. Claimant also admitted that when he called off work following his treatment at WorkNet, he told Employer it was because of C[OVID]-19, not the shoulder injury, and he did not return to work when he was cleared to do so based on C[OVID]-19 on or about December 1, 2021.

Claimant also testified via video,[3] reiterating some of his prior testimony and providing additional details as to his continued treatment with Dr. Purewal, as well as other treatment, including left shoulder surgery, medications and pain cream, and physical therapy, which began after the surgery. He continued to experience discomfort, restless nights, tingling in his shoulder and clavicle when he moves the shoulder, and has to sleep sitting up. Claimant could not perform daily tasks that require him to move around. He had not returned to work in

3

any capacity and began receiving Social Security Disability benefits in September 2022. On cross-examination, Claimant testified he saw Dr. Purewal about twice a month, last seeing him in September or October 2022, and that while he asserted only a work-related shoulder injury, Dr. Purewal was treating him due to Claimant advising that the "whole area" being "inflamed." (FOF ¶ 4m, 4o.)

> FN3 Claimant's video testimony is summarized in Finding of Fact 4 and is found at Certified Record Item 16.

Dr. Purewal, who is board-certified in anesthesiology and pain management, testified as follows.[4] He first examined Claimant in December 2021, at which time Claimant described how the injury occurred, his current complaints of pain in the neck radiating to his left shoulder and left upper arm, shoulder pain, and weakness in the left upper arm, that the symptoms were constant and worsened with movement. Following his physical examination of Claimant, which revealed a variety of abnormalities, including decreased reflexes, sensation, range of motion in Claimant's upper left extremity, and decreased motor strength, along with tenderness and positive impingement in the left shoulder and AC joint, which was indicative of rotator cuff pathology, Dr. Purewal's initial diagnosis was work-related rotator cuff pathology. Dr. Purewal described his treatment plan, including an MRI of Claimant's left shoulder and prescription medications, and opined that Claimant was temporarily disabled from his pre-injury position. The MRI showed, among other issues, "a 3-to-4-millimeter thickness tear of the distal fiber of the supraspinatus." (FOF ¶ 6h.) Subsequent visits revealed continued complaints of throbbing, shooting, and stabbing pain in the left shoulder and upper extremity, and the inability to raise his arm above shoulder level, that worsened with movement of the left shoulder. Dr. Purewal referred Claimant to Eric Bontempo, D.O., as Dr. Purewal believed Claimant could be a surgical candidate. Dr. Purewal updated his diagnosis to work-related "left shoulder pain secondary to rotator cuff tears" from which Claimant was not fully recovered. (*Id.* ¶ 6m.) According to Dr. Purewal, a rotator cuff tear could occur in a fall and the tear was either caused by the fall or, if it pre-existed, was aggravated by the fall because Claimant was working normally before the fall and was unable to do so after. (Reproduced Record (R.R.) at 142a-43a.) Dr. Purewal agreed on cross-examination that he does not operate on the shoulder, is not a neurologist or orthopedist, and that there was a degenerative component to Claimant's MRI scans. Dr. Purewal received Dr. Bontempo's records, which he reviewed.

4

Claimant offered the text messages he sent to McPeak and his supervisor regarding his not coming to work in November 2021, and seeking how to resolve the issues so he could remain employed. (*Id.* ¶ 7.) Claimant also submitted Dr. Bontempo's operative report, reflecting his pre-procedure diagnosis of a partial rotator cuff tear in Claimant's left shoulder and a post-procedure diagnosis of a full rotator cuff tear, which Dr. Bontempo repaired in the surgery. (*Id.* ¶ 8.)

. . . .

Employer's medical expert, Dr. Grob, a board-certified orthopedic surgeon who examined Claimant on May 6, 2022, testified by deposition as follows.[5] His physical examination of Claimant revealed, among results, grossly intact rotator cuff strength, no atrophy of the rotator cuff, and minimal tenderness thereof. Dr. Grob reviewed Claimant's diagnostic tests and did not relate any findings from the MRIs to the alleged work incident. He also reviewed Claimant's medical records from WorkNet, Dr. Purewal, and Dr. Bontempo, and opined that if Claimant actually had sustained the claimed injuries, he would not have been able to work immediately thereafter, which did not occur. Dr. Grob indicated the mechanism of the injury did not support Dr. Purewal's diagnosis related to the left rotator cuff. At most, Dr. Grob opined, Claimant sustained a contusion of the left shoulder from which he had recovered by the time of the examination, and that the incident did not aggravate, change, or accelerate Claimant's preexisting conditions of his left shoulder. Dr. Grob concluded that Claimant was fully recovered from any injury he had suffered, had returned to his baseline condition, and could return to full-duty work without restriction.

FN5 Dr. Grob's deposition testimony is summarized in Finding of Fact 9 and found at Certified Record Item 24.

Employer also presented the deposition testimony of McPeak,[6] who testified that he was unaware of any restrictions on Claimant's ability to work prior to Claimant's discharge, that Claimant was trained to immediately report any work injury, and that Claimant never provided a work note or restrictions or advised that he could not work due to the incident. Instead, Claimant continued to work his regular job through

November 9, 2021, and on November 12, 2021, Claimant texted his supervisor about being off work because of a cold, not a work injury. Although scheduled and expected to work for the following several days, Claimant did not come to work and only called off on November 12 and 13, resulting in his being considered no call/no show. McPeak prepared the termination letter, which informed Claimant to contact him with questions, but Claimant did not do so, and work remained available for Claimant. Although he received Claimant's text message on November 16, 2021, he was unaware of any other text messages and did not respond to any.

> FN6 McPeak's deposition testimony is summarized in Finding of Fact 10 and found at Certified Record Item 25.

Employer also presented the deposition testimony of DaGrava,[7] Employer's environmental health and safety manager, who acknowledged that Claimant reported a work injury on November 9, 2021, but asserted Claimant did not report it on October 13, 2021. He indicated that if a work injury had occurred, Employer would attempt to accommodate any restrictions, but Claimant never informed him of an inability to work due to his left shoulder or of any work restrictions due to a work injury. DaGrava indicated the only medical documentation Claimant provided was a negative C[OVID]-19 test on November 16, 2021, which was the last time Claimant communicated with Employer through his discharge date for job abandonment, and work remained available to Claimant, including light-duty work.

> FN7 DaGrava's testimony was summarized in Finding of Fact 11 and is found at Certified Record Item Number 26.

. . . .

The WCJ made the following credibility determinations. Claimant was credible and persuasive in part, and his testimony regarding the occurrence and mechanism of the work injury, notice to Employer, referral to WorkNet, left shoulder symptoms and limitations, his medical treatment, and pre-injury job duties was accepted, as was the continuation of those symptoms and limitations. As between Claimant's testimony and that of McPeak and DaGrava as to notice on and contact with Employer, the WCJ credited Claimant's testimony where it differed, providing, among other reasons, the fact that Employer did not present the testimony of Claimant's direct[] supervisor or general manager and those witnesses never explained

6

why they did not respond to Claimant's texts. The WCJ credited Dr. Purewal's testimony over Dr. Grob's regarding Claimant's left shoulder injury, its work-related cause, and Claimant's non-recovery therefrom. The WCJ found Dr. Purewal's testimony persuasive, noting that Dr. Purewal was Claimant's treating physician, his testimony was consistent with Claimant's medical history and records, and supported by Claimant's credible testimony as to the left-shoulder symptomology and complaints.

Based on the credible evidence, the WCJ found that Claimant provided sufficient notice of the work injury to Employer, including on the date of the injury. The WCJ concluded that "Claimant suffered from left shoulder pain secondary to rotator cuff tears as a direct result of the October 13, 2021 work incident."[] (FOF ¶ 17f.) The WCJ further found that the surgery on Claimant's left shoulder by Dr. Bontempo performed on October 25, 2022, was causally related to that work injury. According to the WCJ, Claimant was temporarily totally disabled due to the work injury as of December 21, 2021, and the loss of earning power as of that date was relating to Claimant's work injury, not job abandonment, and had not fully recovered from the work injury. Finally, the WCJ found that Employer violated the Act by not timely accepting or denying the claim but filing the NCD two months after notice of the work injury and imposed a 20% penalty on the wage loss benefits and interest up to the date of the WCJ's decision. Thus, the WCJ granted the Claim Petition in part and granted the Penalty Petition.

. . . .

Employer appealed to the Board, raising numerous challenges to the WCJ's determinations, including that the rotator cuff tear was work-related, the admission of Dr. Bontempo's operative report over Employer's hearsay objection, that Claimant's loss of earnings after December 21, 2021, was not related to his job abandonment, and the imposition of the penalty. These errors, along with others, Employer argued, rendered the WCJ's decision unreasoned. The Board disagreed, finding that Dr. Purewal's opinions were sufficient to support the WCJ's decision and noting that Dr. Grob acknowledged that Claimant suffered at least a left shoulder contusion. The Board held that the WCJ did not find Claimant had a loss of earnings for the period in November when he called out due to a cold or having C[OVID]-19 and rejected Employer's argument that the WCJ ignored Employer's argument that Claimant was not entitled to wage loss benefits because he was discharged for cause in November 2021. In this regard, the

7

Board observed that a discharge will preclude the award of benefits if it was for conduct reflecting a lack of good faith on the claimant's part, *BJ's Wholesale Club v. Workers' Compensation Appeal Board (Pearson)*, 43 A.3d 559 (Pa. Cmwlth. 2012), but here the WCJ rejected Employer's evidence in favor of Claimant's testimony about the events surrounding Claimant's discharge, finding it significant that despite Claimant's attempts to contact Employer, he never received a response from Employer. The Board also disagreed that Dr. Purewal's testimony was equivocal and incompetent to support causation and disability as of the date of his examination. The Board similarly rejected Employer's argument that it was error to rely on Dr. Bontempo's surgical record to find that the surgery was work [] related, as it was objected-to hearsay, reasoning that Dr. Purewal had opined that Claimant was a potential surgical candidate and referred him to Dr. Bontempo for a surgical consultation. A reasonable inference from this credited testimony, the Board held, was that the left shoulder surgery performed by Dr. Bontempo was work[ ]related. It further found Employer's reasoned decision arguments unavailing. Finally, the Board found no abuse of discretion in the WCJ's granting the Penalty Petition and awarding a 20% penalty because it was undisputed that the NCD was untimely and provided a basis for the award that focused on the facts directly relevant to the violation at issue. It further held that there was no requirement that a claimant must suffer economic harm from an employer's violation in order to impose a penalty. Accordingly, the Board affirmed the WCJ's decision.

Employer filed a petition for review, seeking review of the Board's Order. . . .

(October 18, 2024 Memorandum and Order (Supersedeas Op.), slip op. at 1-10 (single-judge).)

## II. PARTIES' ARGUMENTS

Employer raises the following issues before this Court: (1) whether the WCJ erred in describing Claimant's injury, as there was not substantial evidence to support same; (2) whether the WCJ erred in admitting the operative report, which

violates the *Walker* Rule,[2] such that there is not substantial evidence to support a finding that the surgery Claimant underwent is related to the work injury; (3) whether the award of total disability after December 21, 2021, was erroneous because light-duty work was available to Claimant, but Claimant was terminated for cause; and (4) whether the 20% penalty was grossly disproportionate to any purported violation.

First, Employer argues there was no substantial, competent medical evidence to support the WCJ's finding that Claimant suffered from left shoulder pain secondary to rotator cuff tears. Employer asserts this is not a credibility challenge but rather one challenging whether Dr. Purewal's testimony was competent and unequivocal, which, Employer contends, was not. Specifically, Employer argues Dr. Purewal could not opine whether Claimant suffered a tear or aggravated a preexisting one when he fell and also he incorrectly assumed Claimant was working a labor-intensive job when, in reality, Claimant was still in training.

Second, Employer argues the WCJ erred in considering the operative report of Dr. Bontempo, which was improperly admitted over Employer's objection. According to Employer, without this report, there was no competent evidence to support the finding that Claimant's surgery was work[ ]related. Employer acknowledges Dr. Purewal testified Claimant was a "potential surgical candidate," but this testimony was equivocal and months before the actual surgery. (Employer's Brief (Br.) at 23-24 (quoting R.R. at 124a, 137a-38a).) The Board, Employer claims, did not address Employer's *Walker* Rule issue, instead affirming on the basis of reasonable inferences from Dr. Purewal's testimony. Notwithstanding whether the

---

[2] *Walker v. Unemployment Comp. Bd. of Rev.*, 367 A.2d 366 (Pa. Cmwlth. 1976). The *Walker* Rule is an evidentiary rule that provides "hearsay evidence, admitted without objection, will be given its natural probative effect and may support a finding if it is corroborated by any competent evidence of record." *Alessandro v. Workers' Comp. Appeal Bd. (Precision Metal Crafters, LLC)*, 972 A.2d 1245, 1250 (Pa. Cmwlth. 2009)

9

operative report was admissible, Employer contends it would not support a finding that the surgery was work related, as it listed other diagnoses that could have prompted the need for surgery.

Next, Employer asserts it was error to award total disability benefits after December 21, 2021. Because Claimant was terminated for job abandonment, Employer claims he was not entitled to benefits for that time. Employer claims it is not clear how the WCJ reached the conclusion that Claimant was not totally disabled until December 21, 2021, which was the date Claimant saw Dr. Purewal, when the WCJ did not find Claimant was disabled earlier.

Finally, Employer asserts the 20% penalty was manifestly unreasonable and grossly disproportionate to its technical violation of not issuing an NCD. Citing *Ken Walton General Contractor v. Donahue (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 823 C.D. 2021, filed May 23, 2022),[3] in which this Court reversed a 20% penalty for the same reason, Employer urges us to likewise reverse this award as there is no evidence of prejudice to Claimant. Employer explains that the claim was originally handled under New Jersey law, where Claimant resided, and was denied there before Claimant pursued Pennsylvania benefits. Employer further explains Claimant continued working without restriction until Claimant was terminated for job abandonment. Therefore, Employer argues "there was no reason for Employer to know of its obligation to issue Bureau [of Workers' Compensation] documents in Pennsylvania until Claimant pursued the claim in Pennsylvania." (Employer's Br. at 30.) Employer asserts the penalty here is not related to the delay in issuing the NCD but the amount of time between the injury and the WCJ's

---

[3] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

10

decision, rendering it "manifestly unreasonable and grossly disproportionate to what amounts to a technical violation of the Act," and gives an example illustrating how an NCD issued one day late could lead to a six-figure penalty amount using this logic. (*Id.* at 30-31.)

Because the WCJ's findings about the compensable injury, relatedness of the surgery, and total disability are not supported by substantial evidence, and because the penalty was manifestly unreasonable, Employer asks the Court to reverse the Board's Order, which affirmed the WCJ's Decision.

Claimant responds the Board's Order and, in turn, the WCJ's Decision should be affirmed, as the findings were supported by substantial evidence and there was no error of law or abuse of discretion. Claimant argues the finding of a work-related left shoulder injury is supported by Claimant's and Dr. Purewal's testimony, and Employer's expert, Dr. Grob, acknowledged the injury. Claimant also maintains Employer takes testimony and evidence out of context in an effort to undermine the WCJ's credibility determinations when it comes to Employer's argument that Claimant was terminated. Claimant points out that Employer's expert again confirmed Claimant had restrictions on work placed by Employer's panel and, to the extent Claimant was out of work due to cold symptoms, the WCJ did not award any wage loss benefits for that time period. Claimant asserts the WCJ discussed the evidence of Claimant being off work, including the text messages he sent Employer, in depth, and it is apparent that the WCJ rejected Employer's termination argument. Claimant points out that it is immaterial whether there was evidence to support Employer's argument; rather, under the substantial evidence test, the only issue is whether there was substantial, competent evidence that would support the finding that was made, and here there was.

11

Claimant also argues that Dr. Purewal's testimony was not equivocal or incompetent, asserting this is just another attempt by Employer to challenge the WCJ's credibility determinations. Claimant also denies that admission of the operative report was error. Claimant explains Dr. Purewal testified about referring Claimant to Dr. Bontempo because Dr. Purewal thought Claimant was a surgical candidate, and the reasonable inference therefrom is the surgery was work related. With regard to the penalty award, Claimant argues the penalty was appropriate where it is not disputed that Employer did not issue the NCD until two months after it had notice of the injury.

## III. DISCUSSION

### A. General Legal Principles

Our review in workers' compensation matters is limited to determining whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact are supported by substantial evidence. *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 331 n.2 (Pa. 2000). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support the conclusion." *Wells-Moore v. Workmen's Comp. Appeal Bd. (McNeil Consumer Prods. Co.)*, 601 A.2d 879, 881 (Pa. Cmwlth. 1992). Importantly, "it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ." *Edwards v. Workers' Comp. Appeal Bd. (Epicure Home Care, Inc. & State Workers' Ins. Fund)*, 134 A.3d 1156, 1161 (Pa. Cmwlth. 2016) (citation omitted). Rather, "the critical inquiry is whether there is evidence to support the findings actually made." *Id.* (citation omitted). In evaluating whether there is substantial evidence, "[w]e examine the entire record to see if it contains evidence a reasonable person might

12

find sufficient to support the WCJ's findings." *Id.* If it does, the Court is required to uphold those findings even if there is conflicting evidence. *Id.* This is because "the appellate role is not to reweigh the evidence or to review the credibility of the witnesses." *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). The WCJ, as fact finder, is free to review testimony and make determinations as to weight and credibility. *Miller v. Workers' Comp. Appeal Bd. (Millard Refrigerated Servs. & Sentry Claims Serv.)*, 47 A.3d 206, 209 (Pa. Cmwlth. 2012). "A WCJ may accept or reject the testimony of any witness in whole or in part." *Id.* Finally, when considering whether the WCJ's findings are supported by substantial evidence, we must consider "the evidence in a light most favorable to the party who prevailed before the [WCJ]." *Brewer v. Workers' Comp. Appeal Bd. (EZ Payroll & Staffing Sols.)*, 63 A.3d 843, 848 (Pa. Cmwlth. 2013).

With these principles in mind, we turn to the issues raised by Employer.

**B.** **Whether the finding of the work injury (left shoulder pain secondary to rotator cuff tears) is supported by substantial evidence.**

To prevail on a claim petition, a claimant bears the burden of establishing, through unequivocal medical evidence, that the claimant suffered an injury caused by work and a resulting loss of earnings, i.e., disability. *Ingrassia v. Workers' Comp. Appeal Bd. (Universal Health Servs., Inc.)*, 126 A.3d 394, 401 (Pa. Cmwlth. 2015). Medical testimony is "equivocal if it is based only upon possibilities, is vague, and leaves doubt." *Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 80 (Pa. Cmwlth. 2012) (quotation omitted). The medical expert's testimony must be reviewed "as a whole[,] and [we] may not base our analysis on a few words taken out of context." *Id.* Furthermore, "[t]here are no magic words that a doctor must recite to establish causation." *Campbell v. Workers' Comp. Appeal Bd.*

13

*(Pittsburgh Post Gazette)*, 954 A.2d 726, 730 (Pa. Cmwlth. 2008). "There is no requirement that every utterance that escapes the lips of a medical witness . . . must be certain, positive, and without reservation, exception, or peradventure of a doubt in order to be considered unequivocal." *Id.* "[I]f a medical expert testifie[d], after providing foundation for the testimony, that, in [the expert's] professional opinion, [the expert] believes or thinks a fact exists," the testimony is unequivocal. *O'Neill v. Workers' Comp. Appeal Bd. (News Corp. Ltd.)*, 29 A.3d 50, 57 (Pa. Cmwlth. 2011). The "mere offering of alternative analyses with respect to a work-related injury does not render the expert's testimony equivocal." *Manitowoc Co., Inc. v. Workers' Comp. Appeal Bd. (Cowan)*, 74 A.3d 1137, 1142 (Pa. Cmwlth. 2013). Nor is an expert required to "rule out with absolute certainty other factors that may have caused or contributed to a condition." *Campbell*, 954 A.2d at 730.

Here, Employer argues that Dr. Purewal's testimony as to Claimant's injury was equivocal, and, therefore, it was incompetent and insufficient to support the WCJ's finding that Claimant suffered from left shoulder pain secondary to rotator cuff tears caused by the fall at work. Employer takes issue with Dr. Purewal's testimony in two regards: (1) Dr. Purewal could not link the rotator cuff tear to the fall at work, and (2) Dr. Purewal incorrectly assumed Claimant's job was labor intensive. Upon review of Dr. Purewal's entire testimony, we conclude that, as a whole, Dr. Purewal's testimony constitutes substantial, competent evidence to support the WCJ's finding that Claimant suffered left shoulder pain secondary to rotator cuff tears, as a result of the fall at work. Dr. Purewal's opinion related to Claimant's shoulder pain was consistent from his initial diagnosis, (R.R. at 118a), to the point of his deposition, (*id.* at 129a). Dr. Purewal also testified that Dr. Grob's diagnosis of a contusion was consistent with Dr. Purewal's opinion that a traumatic

14

injury occurred to the shoulder in the fall, resulting either in the tears or aggravation of the tears, if the tears were preexisting. (*Id.* at 130a.) On cross-examination, Dr. Purewal testified Claimant's symptoms "all correlate" to the work injury. (*Id.* at 142a.) In particular, Dr. Purewal stated:

> I would say that when you use logic and . . . if he was performing his job without restrictions prior to the work injury, he had the work injury, he started complaining of these symptoms and then an MRI was done that shows that there's multiple tears in the rotator cuff, . . . I would attribute them to the work injury.

(*Id.* at 142a.) When asked by Employer's counsel about whether the changes could be degenerative, Dr. Purewal responded:

> You know, you can't really -- you can't really say definitively perhaps that accident caused a partial tear or is continuing to worsen tear and made it almost a complete thickness tear. You can't say that. But again, you look at the work accident; if it didn't cause the tear, maybe it would have aggravated that tear and made it worse. That would be the only explanation for when someone is working unrestricted in a fairly labor-intensive job and all of a sudden develops that pain which correlates with the pathology found on the diagnostic study.

(*Id.* at 143a.) Although Dr. Purewal may not have been able to definitively testify the tears predated the fall at work, he was adamant that, in his professional opinion, the onset of left shoulder pain related back to his fall at work and either caused the rotator cuff tears or aggravated them, both of which would be compensable. His testimony was not equivocal in this regard.

Further, although Dr. Purewal acknowledged not reviewing Claimant's testimony and understanding he was a machine operator, (*id.* at 139a), when Employer pointed out he was training in multiple positions and asked if the doctor would know if Claimant could perform those duties, Dr. Purewal responded that

15

there was no evidence suggesting he was working on a restricted basis, (*id.* at 143a-44a). Moreover, Dr. Purewal's understanding of Claimant's position was consistent with Claimant's testimony as to his job title and being trained on various machines. (*Id.* at 42a.) As the Board concluded, "there is no indication that [Dr. Purewal's] opinions were solely predicated on any inaccuracies so as to render them incompetent." (Board Opinion at 15 (citing *Newcomer v. Workmen's Comp. Appeal Bd. (Ward Trucking Corp.)*, 692 A.2d 1062, 1066 (Pa. 1997)).)

C. **Whether the finding that the left shoulder surgery was work related is supported by substantial evidence because the operative report was improperly admitted hearsay.**

Next, Employer argues the WCJ erred in admitting the operative report of Dr. Bontempo over its hearsay objection, and, consequently, there is no evidence to support the WCJ's finding that the surgery Claimant underwent was related to the work injury.

Section 422(c) of the Act provides, in relevant part, "[w]here any claim for compensation at issue before a [WCJ] exceeds fifty-two weeks of disability, a medical report shall be admissible as evidence **unless the party that the report is offered against objects to its admission**." 77 P.S. § 835 (emphasis added).[4] On the other hand, when a claim is for less than 52 weeks, medical reports are admissible. *Id.* We explained the purpose of this Section "is to promote efficiency in the administration of short-term benefit claims." *Weaver v. Workers' Comp. Appeal Bd. (State of the Art, Inc.)*, 808 A.2d 604, 607 (Pa. Cmwlth. 2002). Here, the claim is for greater than 52 weeks. In addition, Employer objected to the operative report's admission as Dr. Bontempo, its author, was not testifying. Thus, under Section 422(c), the operative report was not admissible.

---

[4] Section 422 was added by Section 6 of the Act of June 26, 1919, P.L. 642.

16

The Board appears to have concluded the WCJ did not err in admitting the operative report because Dr. Purewal corroborated that the surgery Claimant underwent to his left shoulder was related to the work injury. Specifically Dr. Purewal, upon reviewing diagnostic studies of Claimant's left shoulder, testified he considered Claimant to be a "potential surgical candidate," for which he referred Claimant to Dr. Bontempo. (R.R. at 124a; *see also id.* at 127a, 138a.) However, in *Ciarolla v. Workers' Compensation Appeal Board (Astrazeneca Pharmaceuticals LP)*, 239 A.3d 204 (Pa. Cmwlth. 2020), we rejected a similar argument that corroborating evidence saves objected-to hearsay evidence. There, a claimant sought review of a Board order, which affirmed the grant of a termination petition. The claimant presented the testimony of her treating physician, who attempted to testify, in relevant part, as to the opinions of two other physicians, neither of whom testified. *Id.* at 207. The employer objected to this testimony, as hearsay, since those physicians were not testifying and subject to cross-examination, and the WCJ sustained that objection. The claimant argued this was error because they corroborated the testimony of the treating physician who did testify.

> We held there was no error in excluding that evidence, explaining:
>
> In workers' compensation cases, hearsay medical reports do not constitute substantial evidence and cannot support an independent finding of a WCJ. This assumption, commonly referred to as the *Walker* [R]ule, applies even if the hearsay evidence is not subject to objection. . . . This Court has further held that the use of hearsay evidence is limited to cases where there is corroborating evidence and there is no objection on the record. . . .

*Id.* at 208 (internal citations omitted). We also held that "if hearsay evidence is objected to, then it is not competent evidence to support any finding." *Id.*; *see also Irizarry v. Workers' Comp. Appeal Bd. (Ames True Temper)* (Pa. Cmwlth., No. 2101

17

C.D. 2007, filed May 15, 2008), slip op. at 8 ("[T]he *Walker* line of cases has clearly established that the use of hearsay evidence is strictly limited to cases where there is both corroborating evidence and where no objection was made on the record."); *Benson v. Workers' Comp. Appeal Bd. (Haverford State Hosp.)*, 668 A.2d 244, 248 (Pa. Cmwlth. 1995) ("While we have previously interpreted [] [S]ection [422(c)] as allowing **unobjected** to hearsay evidence to be used to support a finding of fact if it is corroborated by other competent evidence in the record, properly **objected** to hearsay is not competent evidence and must be excluded from the record.") (emphasis in original); *McCray v. Workers' Comp. Appeal Bd. (Preschool Dev. Programs, Inc.)*, 648 A.2d 348, 352 (Pa. Cmwlth. 1994) (holding hearsay evidence, if properly objected to, is inadmissible even if corroborated).[5]

Since the WCJ improperly admitted the operative report of Dr. Bontempo over Employer's objection, it cannot form the basis of the WCJ's finding that the surgery Dr. Bontempo performed on Claimant was related to the work injury. Thus, we must examine the remaining record to determine if there is substantial evidence to support this finding. As stated above, Dr. Purewal testified that Claimant was a "potential surgical candidate."[6] (R.R. at 124a, 127a, 138a.) Dr. Purewal's testimony that the surgery was causally connected to the work injury was equivocal. Dr. Purewal testified in uncertain terms, as well as months before the surgery even

---

[5] In *City of Philadelphia v. Civil Service Commission*, 879 A.2d 146, 154 (Pa. 2005), the Pennsylvania Supreme Court appeared to question the continued use of the *Walker* Rule in light of Section 422 of the Act. However, since the result is the same here under either analysis, it is not necessary to examine the propriety of its use further.

[6] Dr. Purewal also testified that Dr. Bontempo was "considering [Claimant] for surgery based on his response to therapy," to which Employer objected. (R.R. at 128a.) The WCJ ultimately sustained that objection, in part, and struck that sentence. (WCJ Decision at 4.) Despite this, the Board referenced this testimony in its opinion as one of the reasons why it was reasonable to infer that the surgery was work related. (Board Op. at 16.)

18

occurred. *See Berks Cnty. Intermediate Unit v. Workmen's Comp. Appeal Bd. (Rucker)*, 631 A.2d 801, 804 (Pa. Cmwlth. 1993) (holding a doctor's testimony that a claimant's injuries could have been caused by the fall at work was legally insufficient). In short, the record does not contain competent, substantial evidence to support the finding that Claimant's surgery was related to the work injury, and that determination must be reversed.

### D. Whether the finding that Claimant was totally disabled after December 21, 2021, is supported by substantial evidence.

Next, Employer challenges the determination that Claimant was entitled to disability benefits after December 21, 2021. This argument is based on Employer's assertion that Claimant was terminated for job abandonment.

As stated above, in claim petition cases, the claimant bears the burden of showing their disability, which is synonymous with loss of earnings, was caused by the alleged work injury. *Ingrassia*, 126 A.3d at 401. However, "[w]here the claimant's loss of earnings is a result of a termination for misconduct unrelated to the injury, the requirement of causal connection to the work-related injury cannot be satisfied[,] and [the] claimant is not entitled to disability benefits for that loss." *BJ's Wholesale Club v. Workers' Comp. Appeal Bd. (Pearson)*, 43 A.3d 559, 563 (Pa. Cmwlth. 2012). In such instances, it is the employer that bears the burden of showing "the termination was for conduct that amounts to bad faith or a lack of good faith on the part of the claimant." *Id.* Further, "[i]f the employer has provided work within the claimant's physical limitations at no loss of pay and has shown that the claimant was terminated for conduct evidencing bad faith or a lack of good faith, disability benefits must be denied, regardless of whether the claimant has a physical disability caused by the work-related injury." *Id.* We explained this is because the "loss of earnings subsequent to discharge was caused by [the claimant's] own action,

19

not the work injury." *Edwards v. Workers' Comp. Appeal Bd. (Sear's Logistic Servs.)*, 770 A.2d 805, 808 (Pa. Cmwlth. 2001). Finally, "the WCJ, as fact finder, determines whether a claimant was discharged for conduct evidencing lack of good faith." *Second Breath v. Workers' Comp. Appeal Bd. (Gurski)*, 799 A.2d 892, 900 (Pa. Cmwlth. 2002).

While Employer argues Claimant was discharged for job abandonment on November 19, 2021, and thus was not entitled to benefits after this date, it is apparent from a review of the WCJ Decision that the WCJ did not credit Employer's witnesses in this regard. The WCJ credited Claimant's testimony that he contacted Employer multiple times, all of which went unanswered by Employer. (FOF ¶ 17b.) The WCJ did not expressly explain why Claimant was determined to be temporarily, totally disabled as of December 21, 2021, instead of earlier. However, as the Board explained, even Employer's expert agreed Claimant was placed on restricted duty by WorkNet as of November 10, 2021, and immediately thereafter, Claimant became ill with a cold and/or COVID-19. Thus, the WCJ did not award benefits for this period of illness. Instead, the WCJ awarded them as of the date of Dr. Purewal's first examination. (Board Op. at 13-14.)

Accordingly, we conclude the finding of disability as of December 21, 2021, is supported by substantial evidence.

### E. Whether the 20% penalty was manifestly unreasonable.

Employer's final issue challenges the penalty award. Section 435(d)(i) of the Act provides for imposition of penalties, stating, "Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. . . ." 77 P.S.

§ 991(d)(i).[7]  To prevail on a penalty petition, a claimant bears the burden to show the employer violated the Act.  *DTE Energy Co., Inc. v. Workers' Comp. Appeal Bd. (Weatherby)*, 245 A.3d 413, 422 (Pa. Cmwlth. 2021).  Further, it is within the discretion of the WCJ whether to impose a penalty, but that discretion is not limitless.  *City of Philadelphia v. Workers' Comp. Appeal Bd. (Calderazzo)*, 968 A.2d 841, 850 (Pa. Cmwlth. 2009).  Examples of an abuse of discretion are when the WCJ overrides the law, reaches a manifestly unreasonable result, or bases the decision on partiality, prejudice, bias, or ill will.  *Commonwealth v. Ricci*, 670 A.2d 1129, 1141 (Pa. 1996.)

Here, the WCJ found Employer violated the Act by not accepting or denying the claim in a timely manner by issuing the NCD two months after Employer admitted notice of the injury.[8]  Employer does not challenge that it violated the Act;

---

[7] Section 435 was added by Section 3 of the Act of February 8, 1972, P.L. 25.

[8] Section 406.1 of the Act provides, in pertinent part:

(a)  The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or [an NCP] . . . or pursuant to [an NTCP] . . . , on forms prescribed by the [D]epartment [of Labor and Industry (Department)] and furnished by the insurer. . . .

. . . .

(c)  If the insurer controverts the right to compensation it shall promptly notify the employe or his dependent, on a form prescribed by the [D]epartment, stating the grounds upon which the right to compensation is controverted . . . .

(d)(1)  In any instance where an employer is uncertain whether a claim is compensable under this [A]ct or is uncertain of the extent of its liability under this [A]ct, the employer may initiate compensation payments without prejudice and without admitting liability pursuant to [an NTCP] as prescribed by the [D]epartment.

**(Footnote continued on next page…)**

21

rather, it challenges the amount of the penalty imposed for what it calls a technical violation of the Act as manifestly unreasonable. For support, Employer cites the Court's decision in *Ken Walton*, which also involved the failure to timely file the appropriate paperwork accepting or denying an alleged work injury. Specifically, the employer there issued its NCD 38 days late. A WCJ granted the claimant's penalty petition and imposed a 20% penalty on all indemnity benefits. *Ken Walton*, slip op. at 7. We determined the 20% penalty was manifestly unreasonable because although the NCD was late, the employer filed an answer to the claim petition approximately 10 days earlier, denying liability on the same basis. *Id.* at 15. We explained:

> Under these circumstances, no discernable prejudice to [the c]laimant resulted from [the e]mployer's delay in filing the [NCD]. [The e]mployer's untimely filing, therefore, is at worst a technical violation of the Act. A penalty is not required every time a violation is established. *Galizia v. Workers' Comp. Appeal Bd. (Woodloch Pines, Inc.)*, 933 A.2d 146, 154 (Pa. Cmwlth. 2007). In spite of this, [the] WCJ [] awarded a penalty of 20% of the entirety of [the c]laimant's wage loss benefits in this matter, meaning all wages to which [the claimant] was entitled from August 8, 2017, to September 6, 2018.[20] This penalty is grossly disproportionate to [the e]mployer's violation, which caused no prejudice to [the c]laimant, who had already filed the [c]laim [p]etition by the time he received the [NCD]. As such, we find that . . . [the] penalty award was "manifestly unreasonable" and thus an abuse of discretion.
>
> > FN20 As noted, [the] WCJ [] determined [the c]laimant was totally disabled from August 8, 2017, to "June 2018, when he returned to work part-time," and partially disabled from June 2018 to September 6, 2018. . . . Thus, [the e]mployer was ordered to pay 20% of over one year's worth of wages, plus

. . . .

---

77 P.S. § 717.1. Section 406.1 was added by Section 3 of the Act of February 8, 1972, P.L. 25.

22

> interest, as punishment for a delay of 28 days in submitting initial paperwork relating to [the c]laimant's injury.

*Id.* at 16. Accordingly, we reversed the Board's order to the extent it affirmed the WCJ's grant of the penalty petition.

In the instant manner, the WCJ found Claimant provided notice of his work injuries on the day of the fall (October 13, 2021). (FOF ¶ 17(e).) The WCJ further found that Employer admitted knowledge of the injury as of November 9, 2021. (*Id.*) Thus, Employer should have issued an NCP, NTCP, or NCD by November 3, 2021, or November 30, 2021, at the latest, using Employer's admitted date of notice. Yet, Employer did not file the NCD until January 10, 2022. (*Id.* ¶ 1.) This was anywhere from 41 to 68 days late depending on the date of notice used. As a result, the WCJ imposed "a penalty in the amount of 20% of any indemnity benefits and interest awarded through the circulation date of this decision," which was July 11, 2023. (*Id.* ¶ 17(*l*).) In other words, Employer's penalty was assessed on 636 days' worth, or nearly 2 years' worth, of wages, plus interest, for a delay of 2 months, at most. Moreover, the claim originally was brought in New Jersey, where it was denied, which means Claimant could not be surprised to learn Employer would deny the Claim Petition in Pennsylvania. (R.R. at 32a.) Compared to the penalty award in *Ken Walton*, the penalty here is even more extreme in light of the circumstances. Because the 20% award of a penalty on all indemnity benefits, plus interest, through the circulation of the WCJ's Decision nearly two years after the Claim Petition was filed is manifestly unreasonable given the technical nature of the violation, and with no apparent prejudice to Claimant, we vacate the Board's Order to the extent it affirmed the WCJ's Decision granting the Penalty Petition. This matter is remanded for the Board to further remand to the WCJ to reconsider the amount of the penalty in light of the admitted violation of the Act.

23

## IV.  CONCLUSION

In sum, the WCJ erred by admitting hearsay evidence, over Employer's objection, which formed the basis for the WCJ's finding that Claimant's surgery was work related.  Thus, we reverse the Board's Order to the extent it affirmed that portion of the WCJ's Decision.  We vacate the Board's Order, which affirmed the WCJ's grant of the Penalty Petition, and remand this matter for consideration of a new penalty amount.  However, the findings of the work injury and entitlement to benefits as of December 21, 2021 are supported by substantial evidence of record.  Thus, the Board's Order is affirmed in those regards.

_____
**RENÉE COHN JUBELIRER,** President Judge

Judge Fizzano Cannon did not participate in the decision in this matter.

24

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

MM Metals USA, LLC,           :
               Petitioner       :
                             :
            v.              :    No. 668 C.D. 2024
                             :
Lewis Warner (Workers'      :
Compensation Appeal Board),  :
               Respondent    :

# O R D E R

**NOW**, June 4, 2025, the Order of the Workers' Compensation Appeal Board (Board), dated April 30, 2024, is **REVERSED** to the extent it affirmed the decision of the Workers' Compensation Judge (WCJ) finding the surgery that Lewis Warner (Claimant) underwent was work related. The Order is **VACATED** to the extent it affirmed the grant of Claimant's Penalty Petition, and this matter is **REMANDED** for the Board to remand to the WCJ for imposition of a new penalty. The Order is otherwise **AFFIRMED**.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** President Judge